(No. 43848.▮▮▮▮▮▮▮

*In re* LEE J. SNITOFF, Attorney, Respondent.

*Opinion filed Sept. 20, 1972.—Rehearing denied Nov. 29, 1972.*

PETER FITZPATRICK, ALFRED L. O'CONNOR, MICHAEL FITZPATRICK, of Chicago, for respondent.

JOHN CADWALDER MENK, of Chicago, *amicus curiae.*

MR. JUSTICE WARD delivered the opinion of the court:

The Board of Managers of the Chicago Bar Association and the association's Committee on Grievances have recommended that Lee J. Snitoff, who was admitted to the practice of law in 1955, be disbarred. Under Supreme Court Rule 751 (Ill.Rev.Stat. 1971, ch. 110A, par. 751) the members of the Board and of the Committee serve as commissioners of this court in matters relating to the discipline of members of the bar. A single division of the Committee had recommended that the respondent be suspended from practice for a period of five years, but the full committee amended this recommendation to one that the respondent be disbarred. The recommendation of disbarment was approved by the Board of Managers.

The Committee on Grievances found that in five instances the respondent had drawn worthless checks in favor of clients and presented them as the proceeds from personal injury settlements. In some cases worthless checks had been successively drawn and presented. In a separate instance the Committee found that the respondent had settled a personal injury matter but had not forwarded the client's share of the settlement until about four months after the settlement and the attorney's receiving its proceeds. The matter was settled on February 16, 1968, and the client testified that he was unaware of the settlement until June, 1968, when a friend informed him of it. The respondent said that he had written several letters to the client asking him to come to his office to receive his share of the settlement, but the client denied having received any such letters. The respondent did not produce copies of the letters he said he had written. After the client filed a complaint with the Chicago Bar Association he received his share of the proceeds. The Committee found in another instance that the respondent had settled a personal injury claim but had failed to remit the full

amount to which the client was entitled and had failed to satisfy certain medical expenses of the client. The explanation offered by the respondent was that he had the impression that a personal loan he believed he had made to the client was outstanding. After the client complained to the Chicago Bar Association she received the balance of her share of the settlement. She denied the respondent had ever made any loan to her. The respondent testified that it had taken from April 20, 1967, to August 23, 1967, to ascertain that he had not made such loan. Another finding of the Committee was that the respondent had given the Peoples Gas Light and Coke Co., which had obtained a judgment against him, an insufficient funds check to obtain a satisfaction of judgment. With respect to all of these findings the Committee found that the conduct of the respondent had brought the legal profession into disrepute. It found, too, in all of the counts, except two, which involved the respondent's conduct with clients, that his conduct had constituted conversion of clients' funds. The Committee also found that Dr. Harold F. Rabin, to whom the respondent had referred clients for medical services, had been given insufficient funds checks by the respondent. The respondent had undertaken to protect the physician's claims for services by withholding funds from settlements effected in personal injury cases sufficient to satisfy the charges of Dr. Rabin for professional services. Five such checks, totaling about $5400, were drawn and given to Dr. Rabin. It would appear that the respondent satisfied Dr. Rabin's claims and it appears that the physician requested his attorney to withdraw the complaint he had filed with the Chicago Bar Association. The request was refused.

The Committee in its findings noted that the respondent had made full restitution in all of the matters which had been presented to and considered by the Committee.

There was a finding by the Committee that the

evidence presented against the respondent: "Indicates a pattern of conduct over a period of three years (including during the pendency of these proceedings) of a continuing and consistent disregard for the property rights of his clients and his duties and obligations to his clients, which brings the legal profession into disrepute." (It appears that there had been four instances in which the respondent had drawn and issued worthless checks during the pendency of the disciplinary proceedings. These checks were drawn on closed accounts.)

Basically, the respondent's plea here is that his conduct shows "a pattern of confusion and ineptness in dealing with his fiscal affairs, and not a depraved oppression of clients and planned intent to defraud them." Alluding to the four instances in which worthless checks were drawn while the disciplinary proceedings were being conducted, it is said that "this indicates that this lawyer's offense is pathetic mismanagement during this period of time." It is said, too, that he cooperated with the Committee and has satisfied all of the financial obligations involved in the proceeding. In extenuation it is argued that a large part of the respondent's complained-of conduct was attributable to the threat of garnishment from pressing creditors in a condominium project he was developing. The respondent does acknowledge that his professional conduct has been censurable, but he pleads that his disbarment is not necessary to protect the interest of the public and the legal profession in the maintenance of proper standards of professional behavior. Citing several of our disciplinary decisions, he urges that in cases where, he considers, the conduct of attorneys was more reprehensible than his own, this court imposed sanctions short of disbarment.

We are not, of course, insensitive to the fact that to an attorney an order of disbarment is the ultimate professional sanction, but a review of the conduct of the

respondent persuades us that the recommendation of the Committee and the Board of Managers was not inappropriate.

There was more than inadequate record keeping and addled fiscal accounting. The respondent admits that he "failed to adequately segregate the funds entrusted to him on behalf of his clients," which obviously was improper. Canon 11 of the Canons of Professional Ethics of the Illinois State and Chicago Bar Associations, as of the time of the conduct here, provided: "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." (*In re Bloom, 39 Ill.2d 250, 253.*) The conduct here went beyond simple commingling. There obviously was not a prompt accounting for the client's funds. The evidence was, too, that the respondent sacrificed the welfare of clients in favor of his own personal interests. The respondent would explain in part his conduct towards clients by telling of his fear of garnishment by creditors relative to a personal investment, and yet in his brief filed with us it is observed that there was no showing that he was ever without assets or unable to make good on all his obligations to his clients. There it is said: "On the contrary, there is evidence in the record that respondent owned various pieces of real estate and had unspecified securities being held for him at a bank." At one of the hearings the respondent stated to the Committee that he was going to sell his land and condominium interest. At the same hearing he told the Committee that following an earlier hearing he had "put in another $54,000 since that time to keep the thing [the condominium investment] afloat." The respondent may not have been without financial problems, but the settlements involved in the hearings were relatively modest. It seems clear that he unprofessionally preferred his own affairs above those of

clients, to whom he owed an unqualified fidelity and candor. Apart from all of this, the respondent simply has not shown why his claimed fear of creditors made it impossible for him to negotiate the settlement drafts or effect the settlements so as to protect fully the rights of his clients. Too, the behavior cannot be said to have been indeliberate or occasional. It extended over a three-year period. That the respondent continued to engage in the misconduct which was the basis of the charges against him after the disciplinary proceeding had commenced well may have reflected to the Committee and Board a completeness of insensitivity to professional responsibilities and an indifference to or contempt for the proceeding. The record shows that the respondent, when answering the first four counts of the complaint, told the commissioners: "I have entered into a contract of sale for two major pieces of property in order to obtain liquid funds for myself. I have not, and will not, under any circumstances, write an unfunded check." At the same time, referring to his writing of "bad" checks as habituative, he said: "You are stating four instances whereby bad checks were written. I can perhaps state a hundred to you, or more."

Considering all of this we cannot say that the recommendation of the Committee and the Board is not appropriate. This court has observed: "The purpose of disbarment is not punishment of the attorney, but is for the protection of the public and to maintain the integrity of the profession and the dignity of the courts, of which the attorney is an officer." (*In re Melnick, 383 Ill. 200, 206.*) We consider that to protect the public interest, secure the integrity of the profession and to redress the affront to the administration of justice, the respondent's name should be stricken from the roll of attorneys. Accordingly, a judgment of disbarment is entered.

*Respondent disbarred.*