574 A.2d 1040

**John McHUGH and Joan McHugh, his wife, Appellants,**

**v.**

**LITVIN, BLUMBERG, MATUSOW & YOUNG, A Professional Corporation, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1990.

Decided May 14, 1990.

1

2

James E. Beasley, William P. Murphy, for appellants.
Joseph H. Foster, Thomas J. Ziomek, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of John McHugh and Joan McHugh, his wife (Appellants), from the opinion and order of the Superior Court affirming the order of the Court of Common Pleas of Philadelphia County which entered summary judgment against Appellants and in favor of Litvin, Blumberg, Matusow and Young, a Professional Association (Appellees) in a legal malpractice action. 379 Pa.Super. 95, 549 A.2d 922.

A recitation of the factual background leading up to this appeal is necessary to an understanding of the legal issue before us at this time and can be recounted as follows: On February 12, 1971, John McHugh was seriously injured having fallen on an obstruction aboard the barge "Argoil 150", during the course of his employment as a tankerman. On February 9, 1973, counsel for John McHugh, Joseph Boardman, Esquire, filed a writ of summons in trespass and assumpsit against Mr. McHugh's employer, Interstate Oil Company, and Mobil Oil Company, under the provisions of general maritime law and the Jones Act (46 U.S.C.A.App.

4

§ 688). A complaint against these parties was prepared and filed in June of 1973.

On February 13, 1974, within the three year statute of limitations for bringing actions under the Jones Act, a writ of summons in trespass and assumpsit was filed on behalf of Mr. and Mrs. McHugh, by Attorney Boardman against Interstate Oil Company, Mobile Oil Company and E.W. Saybolt, Inc., and sometime thereafter, Attorney Boardman referred both cases to Appellee Litvin, which entered its appearance for the McHughs on July 5, 1974.

On September 23, 1977, the first action was dismissed by Judge Gelfand of the Court of Common Pleas of Philadelphia County for inactivity under local rule of Civil Procedure 150. This dismissal was affirmed by the Superior Court and allocatur was denied by this court.

Perhaps in response to the first action being dismissed, a complaint was prepared and filed in the second action by Appellee Litvin on August 3, 1979, wherein Mrs. McHugh alleged the loss of her husband's society, comfort and services as a result of his accident. This action was dismissed as to E. W. Saybolt on April 9, 1980, and as to the other defendants on May 19, 1980, by the Honorable James McDermott, now a Justice of this Court, for failure to serve the complaint on the defendants properly. These dismissals were also affirmed by the Superior Court and allocatur was similarly denied by this court on January 22, 1982.

Not long after this court denied allocatur, Appellants retained new counsel who instituted the present action against Appellees, alleging that their negligent handling of both cases caused Appellants to lose their rights to recover damages from Interstate Oil Company, Mobil Oil Company, and E.W. Saybolt, Inc. Appellees filed for summary judgment in its favor as to any claims Mrs. McHugh was alleging, because her only allegation of damage was one for loss of consortium. Appellees argued that no cause of action had been recognized in Pennsylvania on February 12, 1971, permitting a spouse to maintain a loss of consortium claim. Therefore, Appellees could not have breached a duty

to prosecute a hitherto unknown cause of action on her behalf and could not be found responsible to her on a legal malpractice claim. Judge Goodheart of the Court of Common Pleas of Philadelphia County agreed with Appellees and entered summary judgment in their favor and dismissed Mrs. McHugh's complaint against them.

The Superior Court affirmed and we accepted allocatur because the sole issue revolves around the retrospective effect of our decision in *Hopkins v. Blanco*, 457 Pa. 90, 320 A.2d 139 (1974), wherein we recognized the continuing right of a husband to maintain a cause of action for loss of consortium and extended that right to the wife through the passage of the Equal Rights Amendment to our Commonwealth's Constitution, which became effective on May 18, 1971.

It is true that in order for one to make out a cause of action based upon legal malpractice, three elements must be established:

1. The employment of the attorney or other 'basis for duty;
2. The failure of the attorney to exercise ordinary skill and knowledge; and
3. That such negligence was the proximate cause of damage to the plaintiff.

*Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58 (1989).

Appellees argued that there could be no finding that they failed to exercise ordinary skill and knowledge in the handling of Mrs. McHugh's case, because she had no right to maintain a cause of action against anyone for loss of consortium on the day her husband was injured.

Appellants have consistently argued that as of the date our *Hopkins* decision was issued (May 22, 1974) the law of this Commonwealth has been to extend loss of consortium claims as a matter of law retrospectively to the effective date of the Equal Rights Amendment (May 18, 1971). Before the trial court, Appellants pointed out that the effect of *Hopkins* was to extend the right to sue for loss of consor-

tium to cases where the statute of limitation was still running on May 18, 1971, and that since Mrs. McHugh filed her writ of summons in trespass and assumpsit within the statute of limitations (3 years under the Jones Act) she had a right to pursue her loss of consortium claim.

In the Superior Court, Appellants pursued this argument in support of the applicability of *Hopkins* and added that factually this case was indistinguishable from *Hopkins* and that since we opened our courts to such claims which arose prior to May 18, 1971, as we did to Mrs. Hopkins, whose husband was injured on January 16, 1970, it should do so in this case.

Our Superior Court rejected this argument because as it read Appellants' trial court memoranda, they concluded that the parties did not advance this particular reason to the trial court in support of their claim that *Hopkins* applied to them. The Superior Court also rejected the retroactivity argument because, as it read our opinion in *Hopkins*, they could find no evidence that we intended to apply our decision retrospectively.

Suffice it to say that Appellants have always maintained that our *Hopkins* decision was precedent applicable to their case to establish that a cause of action could be pursued in our courts during Appellees stewardship over their cases. This is all that was necessary to preserve the question for appellate review, and we reject the Superior Court's hypertechnical interpretation of our rules in this case. It is true that we usually insist that parties raise issues in the trial court so that they are preserved for appellate review. (See Pa.R.A.P. 302(a) which provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

■ This general rule, however, is inapplicable to a question of whether the facts pleaded in a complaint state a cause of action. *Jefferson Memorial Park v. West Jefferson Hills School District,* 397 Pa. 629, 156 A.2d 861 (1959). When a defendant moves for summary judgment he is

merely alleging that the plaintiff's complaint has not stated a claim upon which relief may be granted. *Goldman v. McShain*, 432 Pa. 61, 247 A.2d 455 (1968).

As we noted in *Jefferson Memorial Park, supra,* when reviewing such appeals what is before us is exactly what the court below had before it, viz., the sufficiency of the complaint under relevant law. If the law, on the basis of the facts pled, gives the plaintiff a cause of action, no other course is open to a court than to sustain the complaint. The fact that the plaintiff may have relied in the court below upon a different reason to support his argument that the law gives him a cause of action cannot fetter a reviewing court's duty to state what the relevant law is and to apply that law under the facts pled to determine whether the complaint sets forth a justiciable cause of action.

Thus, we are obligated to decide the applicability of *Hopkins* to this complaint for if it is applicable, then under the law, a cause of action can be maintained and we would have no choice but to sustain the complaint.

As we have already indicated, our decision in *Hopkins* recognized the right of a husband to pursue a claim for loss of consortium. In light of this affirmance, we indicated that inasmuch as the people of this Commonwealth had expressed their will to guarantee equality of the law to both men and women, by the enactment of an Equal Rights Amendment, we concluded that the right to sue for loss of consortium necessarily extended to the wife.

In reaching our conclusion, we sustained the wife's complaint and remanded for further proceedings. Appellants point out that the Equal Rights Amendment became effective on May 18, 1971, yet this Court applied its ruling to Mrs. Hopkins' cause of action which accrued on the date of her husband's injury, January 16, 1970.

By applying the law to a cause of action which accrued prior to the enactment of the Equal Rights Amendment, Appellants argue that we recognized that claimants whose causes of action had not yet expired on May 18, 1971, could

also benefit from *Hopkins,* and that since they were similarly situated, Appellees were on notice from May 22, 1974, (the date of the Hopkins decision) that the law had changed retrospectively and that Mrs. McHugh could maintain a cause of action for loss of consortium.

Appellees argue that because we did not discuss the retroactivity of our decision in the opinion and because it is not apparent from a reading of the opinion when Mr. Hopkins was injured, it was impossible to conclude whether the law had changed.

■ We disagree. We first note that retroactive application is a matter of judicial discretion which is usually exercised on a case by case basis, although at common law an overruling decision was normally held to be retroactive. *August v. Stasak,* 492 Pa. 550, 424 A.2d 1328 (1981). We also note that sometimes our court has specifically addressed the question of the retroactive application of a decision as we did in *August v. Stasak, supra,* which concerned whether our decision in *Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 371 A.2d 193 (1977), holding that a late notice of a claim would release an insurer only where the notice was prejudicial to the insurance carrier, or as we did when we abrogated local governmental immunity and recognized that causes of action could proceed against local governmental bodies in *Ayala v. Philadelphia Board of Education,* 453 Pa. 584, 305 A.2d 877 (1973). In such circumstances there is no question as to the intent of the court in extending causes of action to cases on direct review where the issue has been preserved.

■ More often than not, however, we have abolished old impediments to bringing actions, thereby recognizing causes of action and have not discussed the effect of our decision but have simply applied them retroactively to the case before us and to cases pending in the courts on the date of the decision recognizing the right to maintain the suit. One of the most significant examples of this was in *Mayle v. Pennsylvania Department of Highways,* 479 Pa.

384, 388 A.2d 709 (1978), where we abrogated the doctrine of sovereign immunity, thus opening our courts to suits against the state and its agencies. We did not discuss the applicability of the decision in *Mayle,* but following its filing, we unhesitatingly applied it to cases pending in the courts on the date of the decision (e.g., *Steinberg v. Commonwealth, Department of Public Welfare,* 480 Pa. 321, 389 A.2d 1086 (1978); *Grieser v. Commonwealth, Department of Transportation,* 480 Pa. 447, 390 A.2d 1263 (1978); *Tokar v. Commonwealth, Department of Transportation,* 480 Pa. 598, 391 A.2d 1046 (1978); *Dubree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978); *Kenno v. Commonwealth, Department of State Police,* 481 Pa. 562, 393 A.2d 304 (1978); *Brungard v. Hartman,* 483 Pa. 200, 394 A.2d 1265 (1978); *Reinert v. Pennsylvania, Department of Transportation,* 482 Pa. 612, 394 A.2d 490 (1978)).

More significantly, we also applied *Mayle* to cases where the cause of action accrued prior to our decision in *Mayle* and where complaints were filed after July 14, 1978, the date of the *Mayle* decision. *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980).

Such an application recognizes that when courts overrule prior impediments to bringing suits they are not creating new causes of action, but are merely opening the courthouse doors which had formerly been closed to such actions. See *Ayala v. Philadelphia Board of Education, supra.* As applied in *Gibson,* we recognized that *Mayle* changed the law to permit litigants to pursue their claims against the Commonwealth that were in existence on July 14, 1978, and in those cases prior to that date where the statute of limitations had not yet expired, regardless of whether a complaint had been filed on the date of the *Mayle* decision.

We believe that *Gibson* is rooted in the notion that where the court announces that a barrier to pursuing a cause of action is removed, litigants have the right to rely on the change and to proceed until and unless the court chooses to speak at a later time and limit the application of the announcement. This is in keeping with the common law

understanding that all judicial decisions are applied retrospectively unless and until the court exercises its conscience to limit the effect of the decision.

Our *Mayle* decision did not indicate that Gibson could sue for an injury sustained a year before the *Mayle* decision, but nevertheless, he proceeded with his action, on the belief that a change in the law had occurred favorable to him. When the question reached us, we never indicated that Gibson's reliance was misplaced and, in fact, indicated that there was no principled reason to discriminate against individuals like Gibson, whose causes of action also accrued before *Mayle*, and whose complaints were filed after-*Mayle*. Though the date of the complaint's filing is relevant to the tolling of the statute of limitations, we clearly articulated that it has no place in the determination of one's substantive rights. *Gibson*, 490 Pa. at 165, 415 A.2d at 85.

We applied similar reasoning in deciding to apply our decision in *Hack v. Hack*, 495 Pa. 300, 433 A.2d 859 (1981), a case which abolished the defense of interspousal immunity to a case which arose out of an accident that occurred approximately one year prior to the *Hack* decision. *Dercoli v. Pennsylvania National Mutual Insurance Co.*, 520 Pa. 471, 554 A.2d 906 (1989). In *Dercoli*, we noted that at the time of our *Hack* decision, the claim was well within the applicable statute of limitations, and with the bar to suit removed and the claim being viable, it would be unfair to raise the bar as to those litigants.

From this background we can conclude that the general law of our Commonwealth continues to be, as it was at common law, that our decisions announcing changes in the law are applied retroactively, until and unless a court decides to limit the effect of the change, and that litigants have a right to rely on the change, especially if they have a suit pending in our courts at the time the change is announced.

Applying this principle to the case *sub judice*, it becomes obvious that on May 22, 1974, when we issued our

decision in *Hopkins*, litigants like Appellants, who had already filed an action for loss of consortium, had a right to rely on the change in the law and to pursue their claim. No court had limited the application of the holding in *Hopkins*, and in fact we applied the holding to Mrs. Hopkins whose husband's accident occurred on January 16, 1970, seventeen (17) months before the Equal Rights Amendment became effective.

To argue that we were not aware of these facts, as Appellees attempt to do, is not only inaccurate but is raising a smoke-screen. We have reexamined the briefs filed in the *Hopkins* appeal and find that they clearly set out the pertinent facts of when Mr. Hopkins was injured and when the Equal Rights Amendment became effective, as does the Superior Court opinion. Thus, to argue that we did not understand that we were applying the case retroactively to a matter which arose even before the enactment of the Equal Rights Amendment is in error.

We did no more in *Hopkins* than to apply the law to a case that was in our judicial system at the time *Hopkins* was handed down and by implication extend that ruling to all other cases pending before our courts at that time. Appellees had in fact filed a law suit on Mrs. McHughs behalf which was pending at the time *Hopkins* was issued and even filed a complaint in 1979 raising her loss of consortium claim. Why did they do this if she had no cause of action? Obviously, because Appellees believed that the *Hopkins* decision was applicable to them. This was reasonable conduct on their part and demonstrates the truth of the general understanding that changes in the law are applied to cases in the system at the time the change is announced. To argue now that no duty existed is to fight the facts which imposed a duty on Appellees, because they in fact responded to *Hopkins* and filed a consortium claim for Mrs. McHugh.

Since Mrs. McHugh had a claim pending in our courts when *Hopkins* was announced, she had a right to rely on that change and their attorneys were obligated to proceed

with her suit in a professional manner using ordinary skill and knowledge. The Opinion and Order of the Superior Court is reversed and the matter remanded to the trial court for further proceedings.

McDERMOTT, J., did not participate in the consideration or decision of this matter.