621 A.2d 595

**Richard E. MILLER, Appellant,**

**v.**

**Jerold S. BERSCHLER and Saul Solomon, Ind. and T/A Solomon and Berschler, a Partnership.**

Superior Court of Pennsylvania.

Argued Aug. 13, 1992.

Filed Jan. 22, 1993.

Reargument Denied March 31, 1993.

Paul R. Beckert, Jr., Bensalem, for appellant.

Thomas D. Paradise, Philadelphia, for appellees.

Before CAVANAUGH, WIEAND and McEWEN, JJ.

CAVANAUGH, Judge:

This is an appeal from an order granting appellees' renewed motion for summary judgment. The issue to be decided in this appeal is whether the lower court correctly found that appellant's legal malpractice claim was not viable in light of the recent Supreme Court decision in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 587 A.2d 1346 (1991), *reh. denied*, 528 Pa. 345, 598 A.2d 27 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Appellant makes divers arguments attempting to distinguish *Muhammad*. We agree with the lower court and three other courts of Common Pleas[1] that have applied *Mu-*

---

1. *See Phelps v. Williams* (No. 83–5499–14–2 C.C.P. Bucks Co., Oct. 30, 1991); *Estate of Andrews v. Newman*, (No. 88–06167 C.C.P. Montgomery Co., Oct. 8, 1991); *Dries v. Holko* (No. 86–C–1942 C.C.P. Lehigh Co., Sept. 27, 1991) (bench opinion).

*hammad* and find that within its confines the rule of *Muhammad* is well nigh absolute.

The facts are as follows. The appellant, Richard E. Miller, was represented in a divorce action by Jerold Berschler, Esq., a partner in the law firm of Solomon and Berschler. During the course of the divorce action, Miller and his wife entered into a property settlement agreement. By its terms, Miller agreed, *inter alia,* to pay alimony to his wife until his retirement, his wife's remarriage, or the death of either party. The settlement agreement, however, did not address the wife's possible cohabitation with another adult male after the divorce.

After a decree in divorce was entered, the wife began cohabitation with an adult male around Thanksgiving of 1986. In 1987, Miller learned of the cohabitation and applied to the court to terminate his alimony payments. The court denied his application, finding that cohabitation was not specified in the agreement as an event which would cause alimony to terminate. This legal malpractice action against the appellee was subsequently filed.

Appellant complains that he was not advised or made aware of the impact of the Divorce Code, or the necessity of a cohabitation provision in the settlement agreement for termination of alimony liability. The complaint suggests that it was because he lacked this information that he assented to an agreement which did not expressly terminate the payments of alimony in the event of his wife's cohabitation. The damages the appellant has sought are essentially the amount of alimony payments that he has made as of the date of cohabitation until the date when, under the agreement, alimony terminates. A motion for summary judgment by the appellee was initially denied. However, after the Supreme Court's decision in *Muhammad, supra,* the appellee renewed his motion based on the import of that case. The court granted the appellee's motion, noting that *Muhammad* forecloses legal actions based on negligence and/or contract principles. This appeal followed.

The law relating to summary judgment is settled. A motion for summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Intili v. Salak*, 403 Pa.Super. 578, 584, 589 A.2d 761, 764 (1991); *Johnson v. Woodland Hills School District*, 135 Pa.Cmwlth. 43, 45 n. 2, 582 A.2d 395, 397 n. 2 (1990). In passing upon a motion for summary judgment, a court must examine the record in the light most favorable to the non-moving party, and must resolve all doubts against the moving party. *Mariscotti v. Tinari*, 335 Pa.Super. 599, 601, 485 A.2d 56, 57 (1984); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984).

The sole issue in this appeal is whether in the instant matter *Muhammad, supra*, bars actions for legal malpractice which arises out of the settlement of a prior claim. The appellant asserts that *Muhammad* is limited to allegations of attorney negligence in investigating a matter in anticipation of settlement or negotiating the settlement itself. He distinguished this situation, which he claims involves the duty of an attorney to explain the consequences of a proposed settlement. He characterizes *Muhammad* as arising out of circumstances where a dissatisfied litigant believed he should have received more money or a better settlement. He notes the undeniable harshness of a rule of law which would foreclose legal malpractice actions for an attorney's negligence in advising his client in regards to the provisions of a settlement agreement.

We find the appellant's argument unpersuasive. *Muhammad*, speaking in straightforward terms, bars litigants who have entered a settlement agreement from subsequently maintaining a suit against their attorney for legal malpractice unless fraud is alleged in the inducement of the agreement. While it may be argued that this is a fundamentally problematic holding, we are obliged to follow the pronouncements of our highest court. *See, e.g., Commonwealth v. Dugger*, 506 Pa. 537, 545, 486 A.2d 382, 386 (1985) ("The formal purpose of the Superior Court is to maintain and effectuate the decisional law of [the Supreme] Court as faithfully as possible.")

In *Muhammad,* plaintiffs' infant son died following surgery from improperly administered general anesthesia. Plaintiffs hired a law firm to bring a medical malpractice action against the anesthesiologist, the surgeon and the hospital. After settlement negotiations, the defendants offered a settlement of $23,000 to the plaintiffs. This offer was later increased to $26,500 at the suggestion of the court, and the plaintiffs accepted it. Subsequently, however, the appellees informed the law firm they were dissatisfied with the settlement. When they found out that the settlement agreement could not be broken, the plaintiffs retained new counsel and sued the law firm for legal malpractice. The law firm argued that under the doctrine of collateral estoppel, the action should be dismissed because it was trying to relitigate the settlement agreement. Although it found the doctrine of collateral estoppel inapplicable, the Supreme Court *sua sponte* promulgated a rule affording attorneys broad protection in malpractice cases.

> Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which the plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when the client has agreed to a settlement. Rather, only cases of fraud should be actionable.

*Id.,* 526 Pa. at 546, 587 A.2d 1346. The court gave the following rationales for this rule: the court declared that the essence of settlement is contractual in nature, and similar to a contract, the time for questioning whether a settlement agreement is advantageous is before settlement, *id.* at 547–548, 587 A.2d at 1349; the contract principle of *caveat emptor* applies similarly to settlements, so that a person entering into a settlement agreement is locked into whatever compromise he agreed to once the settlement becomes effective, *id.* at 548, 587 A.2d at 1349; the Court found that overriding principles of public policy supported its result, as lawyers might be reluctant to settle a case if they feared a client might later find a way to sue them for something that " 'could have been done,

but was not,' " *id.* at 548, 587 A.2d at 1349; the court was concerned with the lack of finality and delay in already overcrowded courts and believed "we [the court] should view 'litigation concerning litigation' cases with a jaundiced eye," *id.* at 549–550, 587 A.2d at 1350; litigation over settlements is of particular concern, because settlement is an essential part of the efficient operation of our judicial system, *id.* at 550, 587 A.2d at 1349; and finally, there are distinct societal advantages to a judicial system which is not adversarial in nature but attempts to resolve disputes by compromise or concession, *id.* at 551–552, 587 A.2d at 1351.

It appears that, given the broad policy rationales employed by the Supreme Court and the unqualified articulation of its "simply stated" holding, *Muhammad* proclaims a clear, bright line rule which, absent fraud, shields attorneys from legal malpractice claims sounding in negligence or contract where they involve cases concluded by completed settlement. Post–*Muhammad,* a party dissatisfied with the settlement agreement provided by their attorney can only seek redress if it can establish it was fraudulently induced into agreeing to settle, and it is incumbent on the client to plead with specificity fraud in the inducement. *Id.* at 552–53, 587 A.2d at 1351.

Given the doctrinal sweep of the court's decision, we find that the lower court, which interpreted *Muhammad* in a way similar to this opinion, did not err in granting summary judgment. If *Muhammad* is to be narrowed, direction must come from our Supreme Court.

Order affirmed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

I respectfully dissent. The majority, in my judgment, paints with too broad a brush. By taking the decision of the Supreme Court in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 526 Pa. 541, 587 A.2d 1346 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991), and applying it to facts to which that decision can

have no reasonable application, the majority has unnecessarily and unwisely expanded the Supreme Court's holding. It has fashioned a rule of law which blindly protects the careless and does a disservice alike to those members of the lay public who must rely upon their lawyers for legal advice and the conscientious, careful practitioners who willingly accept the responsibility for providing such advice.

The issue in this appeal is the liability of a lawyer who negligently failed to advise his client correctly about the state of the law before the client entered a marital settlement agreement. The trial court held that there could be no such liability and entered summary judgment for the defendant-lawyer. A majority of this Court agrees and affirms. I disagree and would reverse.

The plaintiff, Richard E. Miller, was represented in a divorce action by Jerold Berschler, Esquire, a partner in the law firm of Solomon and Berschler. During the course of the divorce action, Miller entered a property settlement agreement by the terms of which he agreed, inter alia, to pay alimony to his wife until Miller's retirement, his wife's remarriage, or the death of either party. The agreement said nothing about the wife's possible cohabitation with an adult male. Miller has alleged that his lawyer negligently failed to advise him that the wife's continued habitation with an adult male, in the absence of agreement to the contrary, was a basis for terminating alimony under the provisions of the Divorce Code at 23 Pa.C.S. § 3706. It was solely because he lacked this information, he suggests, that he agreed to the terms of a written contract which did not expressly terminate the payments of alimony in the event of his wife's cohabitation with an adult male.

After a decree in divorce had been entered, Miller's wife, in November, 1986, began cohabiting with an adult male. Miller thereupon applied to the court to terminate his payments of alimony. The court, finding an agreement to pay alimony despite his former wife's cohabitation, denied his application. Miller then commenced an action against his lawyer, alleging negligence in failing to advise him correctly of the applicable

law and his rights regarding the payment of alimony. A motion for summary judgment was denied. Following the Supreme Court's decision in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick, supra,* however, the lawyer-defendant renewed his motion for summary judgment, and this time the court granted it. Miller appealed.

A motion for summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In passing upon a motion for summary judgment, a court must examine the record in a light most favorable to the nonmoving party and must resolve all doubt against the moving party. *Mariscotti v. Tinari,* 335 Pa.Super. 599, 601, 485 A.2d 56, 57 (1984); *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984).

"The essential elements which must be demonstrated to state a cause of action for attorney malpractice are: the employment of the attorney or other basis for duty; the failure of the attorney to exercise ordinary skill and knowledge; and that such negligence was the proximate cause of damage to the plaintiff." *Liberty Bank v. Ruder,* 402 Pa.Super. 561, 567, 587 A.2d 761, 764–765, *allocatur denied,* 528 Pa. 637, 598 A.2d 994 (1991). See also: *McHugh v. Litvin, Blumberg, et al.,* 525 Pa. 1, 5, 574 A.2d 1040, 1042 (1990); *Rizzo v. Haines,* 520 Pa. 484, 499, 555 A.2d 58, 65 (1989); *Schenkel v. Monheit,* 266 Pa.Super. 396, 398, 405 A.2d 493, 494 (1979). A lawyer will be found negligent if he or she fails to possess and exercise that degree of skill, knowledge and care that would normally be exercised by members of the profession under the same or similar circumstances. *McPeake v. Cannon, Esquire, P.C.,* 381 Pa.Super. 227, 232, 553 A.2d 439, 441 (1989). The duty to exercise ordinary care extends also to the conduct of settlement negotiations. *Rizzo v. Haines, supra,* 520 Pa. at 499, 555 A.2d at 65. A lawyer has a duty to inform himself of the facts as to how a proposed settlement affects his or her client, and to inform the client as to the consequences thereof. 7A C.J.S., Attorney & Client, § 261, citing *Wade v. Clemmons,* 377 N.Y.S.2d 415, 84 Misc.2d 822

(1975). See also: *In re Snitoff*, 53 Ill.2d 50, 289 N.E.2d 428 (1972), *cert. denied, Snitoff v. Board of Managers of Chicago Bar Ass'n.*, 412 U.S. 906, 93 S.Ct. 2292, 36 L.Ed.2d 971 (1973); *Joos v. Drillock*, 127 Mich.App. 99, 338 N.W.2d 736 (1983). As the Court observed in *Lang v. Anton*, 40 Pa.D. & C.3d 47 (Pa.Com.Pl.1983),

> A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations.

*Id.* at 48. In order to advise a client properly, a lawyer must be familiar with the well settled principles of law and rules of practice which are of frequent application in the ordinary business of the profession; must observe the utmost good faith toward his client; and must give such attention to his duties, and to the interests of his clients, as ordinary prudence demands, or members of the profession bestow.

*George v. Caton*, 93 N.M. 370, 377, 600 P.2d 822, 829 (1979). "A lawyer has an obligation to his or her clients to scrutinize any contract which [he or she] advise[s] [a] client to execute and [is] required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it.... The duty imposed on a fiduciary embraces the obligation to render a full and fair disclosure to the [client] of all facts which materially affect his rights." *Soderquist v. Kramer*, 595 So.2d 825, 830 (La.App.1992). See also: *Bush v. O'Connor*, 58 Wash.App. 138, 791 P.2d 915 (1990) ("Under common law, an attorney unquestionably has a duty to investigate the applicable law and to disclose the results to his clients").

The provision of the Divorce Code which provides for termination of alimony in the event the receiving spouse cohabits with another is a principle of law which is known to practitioners of marital law and one which the defendant-lawyer should have been aware of in the instant case. Even if he were unfamiliar with the applicable provision of the statute, moreover, he should have familiarized himself with it before advising the client regarding his duty to pay alimony. It

seems readily apparent to me, therefore, that appellant has stated a cause of action for legal malpractice and that judgment should not be entered summarily in favor of the defendant.

The decision of the Pennsylvania Supreme Court in *Muhammad v. Strassburger, et al., supra,* does not require a different result. In *Muhammad,* the lawyers had represented parents who had a medical malpractice claim for the death of their son. As a result of negotiations, the parents agreed to settle their claim for the sum of twenty-six thousand, five hundred ($26,500.00) dollars. Although the parents subsequently expressed dissatisfaction with the amount of the settlement, the court in which their action had been pending ruled that the settlement agreement would be enforced.[1] Thereafter, the parents brought suit against their lawyers for legal malpractice, contending that the lawyers had been negligent in recommending settlement. The trial court sustained preliminary objections in the nature of a demurrer to the complaint and dismissed the action. The Superior Court reversed, and the Supreme Court granted allocatur. After argument, the Court held that the parents had failed to state a cause of action on which relief could be granted. The Court said:

> This case must be resolved in light of our longstanding public policy which encourages settlements. Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

*Id.,* 526 Pa. at 546, 587 A.2d at 1348. The Court reasoned as follows:

> Mindful of these principles [which encourage and support settlements in our court system], **we foreclose the ability**

---

1. The decision of the trial court was affirmed on appeal.

**of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies.** To permit otherwise results in unfairness to the attorneys who relied on their client's assent and unfairness to the litigants whose cases have not yet been tried.... (emphasis added).

We do believe, however, there must be redress for the plaintiff who has been **fraudulently induced** into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement. (emphasis in original).

*Id.* at 552, 587 A.2d at 1351.

The salutary policy which undergirded the Supreme Court's decision in *Muhammad* has no application to the facts of the instant case. In *Muhammad,* the only issue necessary to the client's decision to accept or reject the settlement was the amount of money being offered. In the instant case, the defendant-lawyer's alleged negligence does not lie in the amount agreed to be paid in settlement. The settlement agreement in this case involved a great deal more than offering and accepting an amount in settlement of appellant's rights and obligations. The intelligent entry of an agreement settling marital property rights depended upon appellant's knowing and understanding all relevant considerations. This required that his lawyer investigate the applicable law and disclose the effect thereof upon a settlement of the marital property rights. Without such information, the client could not make an intelligent decision regarding the terms of the agreement. In this respect the plaintiff in the instant case was in the same position as any other client who relies upon the advice of a lawyer before entering a complex, legal agreement. His position was not altered merely because the legal agreement had the effect of settling amicably a pending divorce action. As such, the client was entitled to be told about the law pertaining to his obligation to pay alimony, the

duration thereof, and the nature of those events which would effect a termination of his obligation.

In my best judgment, therefore, *Muhammad* is not dispositive of the instant appeal. The policy which encourages settlements of law suits does not operate to relieve a lawyer from a duty to inform his or her client of all relevant considerations before the client enters and signs a complex legal agreement. In such cases, the client must be told of the impact of the agreement and the possible consequences that may arise therefrom. There must be a fair disclosure to the client of all facts which may materially affect the client's rights.

The record in the instant case suggests that there is a factual dispute as to whether the defendant-lawyer fulfilled this obligation to the client. In such a case, the entry of summary judgment is inappropriate.

I would reverse and remand for further proceedings.