### McKay v. McKay

*Charles G. Young,* for plaintiff.
*Joseph J. Dougherty,* for defendant Donald P. McKay.
*Thomas X. McAndrew,* for defendants Lord & Mulligan.
*Eric D. Turner,* for defendant David McKay.

BATTLE, *J.,* November 28, 1994—Plaintiff, Ann E. McKay, has initiated action against her husband, Donald P. McKay, her son, David John McKay, and the attorneys who represented her at the time of her execution of a postnuptial agreement. Wife avers that the defendant attorneys committed legal malpractice and engaged in a civil conspiracy with her husband to commit a fraud against her. The defendant attorneys, John T. Mulligan and Francis Lord, trading as Lord & Mulligan have filed a motion for summary judgment to which this opinion relates.

The material facts of this case are as follows. Husband and wife were married on September 20, 1952. Husband and wife separated for a period of time and, prior to the initiation of former divorce proceedings, the PNA was executed on or about July 6, 1988. Husband and wife were divorced in September 1988.

212

Wife alleges in her complaint that her husband hid assets and property holdings from her prior to the execution of the PNA. Wife further avers in her complaint that husband referred her to the defendant attorneys for representation and preparation of the PNA. The defendant, Francis Lord, according to the wife's complaint, characterized the PNA as "a good deal." In essence, wife's claim is that husband and the defendant attorneys conspired to defraud her of her appropriate share of marital assets and that such conduct constituted legal malpractice. Wife's further claim is that the defendant attorneys committed malpractice for failing to properly represent her and for violating certain provisions of our code of professional responsibility.

## STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is only appropriate where viewing all the facts in the light most favorable to the nonmoving party and resolving all doubts as to the existence of issues of material fact against the moving party, the moving party is entitled to judgment as a matter of law." *Dorohovich v. West American Insurance Co.,* 403 Pa. Super. 412, 419, 589 A.2d 252, 256 (1991).

## LEGAL MALPRACTICE

Plaintiff alleges that the defendant attorneys were negligent in failing to represent her properly; failing to research and investigate the law properly; failing to give proper advice; failing to advise her of her rights under the law; failing to require that husband disclose all of the marital assets; failing to discover the value of all the marital assets; failing to keep themselves informed of the law as it affected the plaintiff and her rights; and misleading the plaintiff into believing that her rights were protected; as well as failing to use due

care in representing the plaintiff. Plaintiff further alleges that defendant attorneys breached their fiduciary duty to her. Wife claims that the defendant attorneys knew or should have known that their actions would hurt her; that such actions were willful, wanton, and with reckless disregard to her rights and best interests, and that the defendant attorneys represented both wife and husband simultaneously which constituted outrageous conduct.

Plaintiff and defendants differ as to the legal malpractice standard which controls the case at bar. The plaintiff cites a negligence standard of malpractice as the appropriate standard for our review. In the case of *McHugh v. Litvin, Blumberg, Matusow & Young,* 525 Pa. 1, 574 A.2d 1040 (1990), our Supreme Court set out a three part test to determine if legal malpractice has occurred. The test is as follows:

"(1) The employment of the attorney or other basis of duty;

"(2) The failure of the attorney to exercise ordinary skill and knowledge; and

"(3) That such negligence was the proximate cause of damage to the plaintiff." *Id.* at 5, 574 A.2d at 1042.

The defendant attorneys argue that the standard set forth in *McHugh* is not the appropriate standard to be used in the case at bar. The defendant attorneys cite *Muhammad v. Strassburger,* 526 Pa. 541, 587 A.2d 1346 (1991), *cert. denied,* 112 S.Ct. 196 (1991) as the appropriate malpractice standard in cases such as the case at bar. In *Muhammad,* the Pennsylvania Supreme Court set forth the standard for determining legal malpractice when a client is dissatisfied with a settlement agreement. In *Muhammad* the court held that it: "[w]ill not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff

agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable." *Id.* at 546, 587 A.2d at 1348.

Our Supreme Court in *Muhammad* also noted that "[t]his situation has been referred to as the 'too bad category' of contracts; although a party to a contract believes he might have made a better deal after he agreed to the original contract, he is nonetheless bound by the terms of that primary agreement." *Id.* at 548, 587 A.2d at 1349. The *Muhammad* court also noted that there is a strong and historic policy of encouraging settlements. *Id.*

While *Muhammad* dealt with an action against attorneys in regard to the dollar value settlement of a medical malpractice case, the principles of *Muhammad* have also been applied to actions against attorneys in divorce/equitable distribution cases. In *Miller v. Berschler,* 423 Pa. Super. 405, 621 A.2d 595 (1993), our Superior Court considered a case where a husband brought suit against his former attorney because the property settlement agreement which the attorney prepared did not contain a provision terminating alimony upon the former wife's cohabitation with another man. The husband in *Miller* complains that he was not advised or made aware of the impact of the divorce code or of the necessity of the cohabitation provision in the settlement agreement for the termination of alimony liability. The husband's complaint indicated that because he lacked this information that he had assented to an agreement which did not expressly terminate the payments of alimony in the event of his wife's cohabitation. Our Superior Court, based upon the decision of *Mu-*

hammad, held that post *Muhammad,* a party dissatisfied with a settlement agreement provided by the party's attorney can always seek redress if the party can establish that the party's assent to the agreement was fraudulently induced by the attorney. The *Miller* court stated that it is "incumbent on the client to plead with specifity fraud in the inducement." See *Miller, supra* at 410, 621 A.2d at 598. Our Superior Court has also held in the case of *Martose v. Concilio,* 427 Pa. Super. 612, 629 A.2d 1037 (1993) that an action did not lie in legal malpractice when a party had assented to a property settlement agreement. The *Martose* court relied on *Miller* and *Muhammad* in finding that a party who was dissatisfied with the property settlement agreement cannot sue for legal malpractice absent a specific allegation of fraudulent inducement.

The plaintiffs attempt to distinguish *Muhammad* and *Miller* from the case at bar because the settlement agreement in *Muhammad* was prepared and executed after the medical malpractice claim had been filed and the property settlement agreement in *Miller* had been prepared and executed after the divorce/equitable distribution had begun. The plaintiff argues that the cited cases are not applicable to the case at bar because the property settlement agreement was prepared prior to the initiation of any divorce/equitable distribution proceedings. The plaintiff's attorney has not cited any relevant case law for such a proposition. This court cannot find any rationale which would distinguish the Superior Court's reasoning so that it would only apply to settlement agreements executed after legal actions had been initiated. Certainly, the policy of encouraging settlements extends to the settlement of anticipated litigation.

This court feels bound to follow the Superior Court's reasoning in *Muhammad, Miller* and *Martose.* There-

fore, only if the wife is able to demonstrate that the defendant attorneys engaged in fraudulent conduct, can the wife's claim be recognized. Therefore, a review of the specific allegations regarding the wife's claim that the defendant attorneys engaged in fraud and conspiracy with her husband will now be reviewed.

## FRAUD AND CIVIL CONSPIRACY

Plaintiff wife alleges that the defendant attorneys entered into a conspiracy with her husband in order to defraud her. A cause of action for civil conspiracy requires that two or more persons enter an agreement to commit an unlawful act or to perform an otherwise lawful act by unlawful means. See *Burnside v. Abbott Laboratories,* 351 Pa. Super. 264, 277-78, 505 A.2d 973, 980 (1985). In the case at bar, the basic allegations of the action for civil conspiracy are that the defendant attorneys engaged in a fraud with the husband. Therefore, whether or not a conspiracy can be shown, a conspiracy would require a showing of fraud. This court must only address the conspiracy issue if the defendant attorneys' motion for summary judgment in regard to the fraud claims is not granted. Therefore, the fraud issue will be addressed first.

The elements of the fraud are as follows:

(A) A misrepresentation.

(B) A fraudulent utterance thereof.

(C) An intention by the maker that the recipient will thereby be induced to act.

(D) Justifiable reliance by the recipient upon the misrepresentation.

(E) Damages to the recipient as a proximate cause.

See *Scaife Co. v. Rockwell-Standard Corp.,* 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), *cert. denied* 407

U.S. 920 (1972). The law of fraud was reviewed by the Pennsylvania Superior Court in the case of *Delanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 464 A.2d 1243 (1983). In *Delanty* the court stated: "... fraud can take many forms. The courts should be quick to look for fraud, but not as quick to declare it.... Fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture.... It has been said that fraud may induce a person to assent to something which he would not otherwise have done, or it may induce him to believe that the act which he does is something other than it actually is.... To be actionable, the misrepresentation need not be in the form of a positive assertion.... It is any artifice by which a person is deceived to his disadvantage.... It may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment.... It is well settled that fraud is proved when it is shown that the false representation was made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false.... It has also been established that 'the deliberate nondisclosure of a material fact amounts to a culpable misrepresentation no less than does an intentional affirmation of a material falsity....' Yet, a misrepresentation innocently made is also actionable if it relates to a matter material to the transaction involved; while if the misrepresentation is made knowingly or involves a non-privileged failure to disclose materiality is not a requisite to the action.... A misrepresentation is material when it is of such a character that if it had not been made, the transaction

would not have been entered into.... One deceived need not prove that fraudulent misrepresentation was the sole inducement to the investment of money, a material inducement is sufficient." *Delanty, supra* at 107-108, 464 A.2d at 1251-52. (citations omitted)

In the case at bar, the wife argues in the brief submitted in opposition to the motion for summary judgment that evidence of fraud committed by the defendant attorneys is as follows:

"(A) That the defendant attorneys did not disclose that they were performing legal services for husband in violation of Rule 1.7 of the Rules of Professional Conduct.

"(B) That the plaintiff asked the defendant attorneys if the agreement was a 'good deal' and the defendant attorneys replied in the affirmative after which the plaintiff signed the PNA."

In the event that the defendant attorneys violated a rule of professional conduct for failing to disclose their then current or previous representations of the husband, and if the defendant attorneys' indications to the plaintiff wife that the PNA was a "good deal" were made in conscious ignorance of the truth or were made recklessly without caring whether they were true or false, then the plaintiff might possibly (even if not probably) be able to prove fraud. This court believes that, based upon the allegations of record and the statements contained within the answers to interrogatories and deposition testimony submitted in regard to the motion for summary judgment, the plaintiff will have a difficult time in establishing fraud. However, this court believes that such questions are for a jury to determine.

In regard to civil conspiracy, the plaintiff argues in her brief that the following facts exist to support such a cause of action:

"(A) Her husband suggested that she contact the defendant attorneys.

"(B) That the defendant husband did not read the PNA when given to him to sign by the defendant attorneys.

"(C) That the defendant husband contacted the defendant attorneys by telephone after wife retained the defendant attorneys to represent her."

The above alleged facts, if proven, can only support the claim for civil conspiracy if the plaintiff can also prove that the defendant attorneys engaged in fraud. While the plaintiff's case in regard to the fraud does not appear very strong at this point, it is of such a character as to require that this matter be presented to the jury. Therefore, the civil conspiracy claims should not be dismissed.

## ORDER

And now, to wit, November 28, 1994, upon consideration of the motion for summary judgment filed by Francis R. Lord, Esquire and the law firm of Lord & Mulligan, and the response thereto, it is hereby ordered and decreed that the motion for summary judgment is denied.