**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| INDEX REALTY, INC., ALBERT A. CIARDI, III, RUDOLPH J. DIMASSA AND ANTHONY MASAPOLLO | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| JOSEPH J. GARGANO, AND JOSEPH Q. MIRARCHI AND MIRARCHI LEGAL SERVICES, P.C. | : : : : : : | No. 2688 EDA 2017 |
| APPEAL OF: JOSEPH Q. MIRARCHI, ESQUIRE | : : | |

Appeal from the Judgment Entered August 4, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): August Term, 2015 No. 02844

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 22, 2018**

Joseph Q. Mirarchi and Mirarchi Legal Services, P.C. (collectively "Counsel") appeal from the judgment entered in favor of Joseph J. Gargano ("Client") for $19,000, made final by the entry of orders granting Client's motion for post-trial relief and denying Counsel's motion for reconsideration. We affirm.[1]

---

[1] Additionally, we dispose of several outstanding motions filed in this Court. Client filed a document entitled, "Petition for Oral Argument and to Tax Costs of Supplemental Reproduced Record Against [Counsel]" on April 11, 2017. Counsel responded to both requests. We denied the application for oral

The trial court set forth the facts and procedural history of this case in its Pa.R.A.P. 1925(a) opinion. Trial Court Opinion, 6/3/18, at 1–6. In summary, Counsel represented Client in a breach-of-contract action filed against Client's former employer, Index Realty, Inc. and its individual owners of Le Castagne restaurant (collectively "Index Realty") for unreimbursed expenditures on alcohol ("Contract Action"). Counsel failed to notify Client of an arbitration hearing scheduled in the Contract Action and failed to attend the hearing on Client's behalf. Consequently, a judgment of *non pros* was entered against Client.

Index Realty then sued Client and Counsel under the Dragonetti Act, 42 Pa.C.S. §§ 8351–8355 ("Dragonetti Action"). Client filed an answer in the Dragonetti Action, along with new matter, a counterclaim against Index Realty for the $19,000 in unreimbursed expenditures ("Counterclaim Action"), and a crossclaim against Counsel for legal malpractice ("Crossclaim Action"). Counsel did not file an answer in the Dragonetti Action; consequently, a default judgment was entered against him. Instead, Counsel filed an untimely petition to open and vacate the *non pros* judgment entered against Client,

___

argument by order filed April 27, 2018. We now deny Client's request to tax Counsel with the cost of supplementing the reproduced record.

Counsel filed a document entitled, "Motion to Accept Reply Brief" on May 11, 2018, and a document entitled, "Motion to Accept Amended Reply Brief" on May 23, 2018. Client has not filed a response to either motion. We grant Counsel's Motion to Accept Amended Reply Brief, and we deny Counsel's Motion to Accept Reply Brief as moot.

which ultimately was denied, and an answer and new matter with affirmative defenses in the Crossclaim Action.

Following an arbitration hearing, the panel found in favor of Client and Counsel in the Dragonetti Action and in favor of Client in the Counterclaim Action in the amount of $1.00; the panel dismissed the Crossclaim Action as moot. Arbitration Award, 5/20/16. Client appealed the arbitration award for *de novo* review in the Philadelphia County Court of Common Pleas. In the meantime, Client and Index Realty reached a mutual discharge agreement but did not have the docket marked settled, satisfied, or discharged.

The trial court conducted a bench trial on February 7, 2017, addressing only the Crossclaim Action. Following the submission of post-trial briefs, the trial court entered judgment in favor of Counsel, ruling that Client failed to state a cause of action upon which relief could be granted. Order, 7/26/17. Client moved for post-trial relief, which the trial court granted because when it entered the July 26, 2017 order, it "was not in possession of the entire Crossclaim." Amended Order, 8/4/17. In the amended order, the trial court vacated its prior order and entered judgment in favor of Client for $19,000. Counsel filed a motion for reconsideration, which the trial court denied. Order, 8/16/17. This appeal followed. Counsel and the trial court complied with Pa.R.A.P. 1925.

On appeal, Counsel presents three issues for our consideration:

1. Whether the court erred as a matter of fact and law by finding in favor of [Client] when it failed to consider the effect of

- 3 -

[Client's] settlement of the underlying matter on the legal malpractice crossclaim filed against [Counsel].

2. Whether the court erred as a matter of fact and law by finding in favor of [Client] when it vacated a prior order of July 26, 2017, and finding that [Client] established a claim for legal malpractice and awarded nineteen thousand dollars ($19,000.00) in damages even though [Client] failed to establish the claim.

3. Whether the court erred as a matter of fact and law by finding in favor of [Client] when it granted [Client's] motion for post-trial [relief] without considering [Counsel's] response to the motion.

Counsel's Brief at 6.[2]

As Counsel's issues involve a nonjury verdict, the following well-settled standards guide our review:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

---

[2] Client argues that Counsel has waived the third issue by failing to address it in the argument section of his appellate brief. Client's Brief at 4, n.1. In response, Counsel claims that he addressed the third issue at pages 46–50 of his brief. Counsel's [Amended] Reply Brief at 2. Because we have accepted Counsel's Amended Reply Brief, we decline to find the third issue waived.

*Stephan v. Waldron Elec. Heating & Cooling*, 100 A.3d 660, 665 (Pa. Super. 2014) (internal citations omitted).

Having thoroughly reviewed the certified record, the parties' briefs, and the relevant jurisprudence, we find no basis to disturb the nonjury verdict. The findings of the trial court are supported by competent evidence, and the trial court did not err in its application of law. Indeed, the trial court accurately and adequately addressed Counsel's issues in its Pa.R.A.P. 1925(a) opinion. In disposing of this appeal, therefore, we affirm on the basis of the trial court's analyses and conclusions that (1) it did not abuse its discretion in granting Client's post-trial motion before Counsel filed his responsive motion; (2) it did not err in ruling that Client established a claim for legal malpractice against Counsel; and (3) it did not err in ruling that Client's mutual discharge with Index Realty did not preclude his legal malpractice claim against Counsel. Trial Court Opinion, 6/3/18, at 8–15.[3]

Judgment affirmed. Application to Tax Costs of Supplemental Reproduced Record denied. Motion to Accept Amended Reply Brief granted. Motion to Accept Reply Brief denied as moot.

Judge Dubow did not participate in the consideration or decision of this case.

---

[3] The parties are directed to attach a copy of the trial court's June 3, 2018 opinion in the event of further proceedings in this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/18

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

INDEX REALTY, INC., *et al*

    Plaintiffs,

        v.

JOSEPH J. GARGANO., *et al*

    Defendants

: August Term 2015
: No. 02844
:
:
:
:
:

Index Realty, Inc Etal Vs Gargano Etal-OPFLD

15080284400079

## OPINION

### I.    Procedural Histories

This case involves a crossclaim appeal from arbitration, for legal malpractice between Appellee, Plaintiff in the Crossclaim, Joseph Gargano and Appellant, Defendant in the Crossclaim, Joseph Q. Mirarchi Esq. Defendant-Appellant, Joseph Q. Mirarchi Esq., appeals This Court's August 4, 2017, judgment for legal malpractice entered against him. The procedural history is comprised of the underlying matter filed on September 11, 2014, where the conduct forming the legal malpractice claim is established, and the above-captioned *Dragonetti* matter, filed on August 21, 2015, where the legal malpractice Crossclaim was filed with New Matter on December 15, 2015.[1] The crossclaim forming the basis of this appeal survived the above captioned *Dragonetti* matter, which is no longer active due to a mutual discharge agreed to between the parties.[2] The procedural history is lengthy but necessary for context.

---

[1] Defendant Gargano's Answer with New Matter and Counterclaim , Case No. 150802844, filed Dec. 15 2015, pp. 8.

[2] Crossclaims continue even after the underlying action has been dismissed. Rule 232(a) of the Pennsylvania Rules of Civil Procedure provides that a "discontinuance or nonsuit shall not affect the right of the defendant to proceed with a counterclaim theretofore filed." Pa. R. Civ. Pro., 232(a). Pa. R. Civ. Pro., 2255(a). Rule 2252 provides that "any party may join an additional defendant who may be liable to or with the joining party on any cause of action arising out of the transaction or occurrence or series of transactions or occurrences upon which the underlying cause of action against the joining party is based." Pa. R. Civ.

## • Procedural History in the underlying matter

The underlying matter, *Gargano V. Index Realty* No. 150802844 (hereinafter the Gargano Matter) is where the conduct forming the legal malpractice claim is established. Plaintiff in the Gargano Matter, Joseph Gargano (hereinafter Plaintiff) filed several causes of action, including breach of contract, against the Defendants in the Gargano Matter, Index Realty Inc., (hereinafter Defendants), and the individual owners of La Castagne restaurant on September 11, 2014.[34] Defendants filed Preliminary Objections on October 23, 2014, and October 24, 2014. On December 5, 2014, Defendants Preliminary Objections were sustained and Plaintiff was given 20 days to file an Amended Complaint. On December 27, 2014, Plaintiff filed Amended Complaint. On January 12, 2015, and January 16, 2015, Defendants filed Preliminary Objections. On February 10, 2015, Plaintiff filed a Second Amended Complaint. On February 25, 2015, the Preliminary Objections of Defendants were dismissed as moot, due to the filing of a Second Amended Complaint by Plaintiff. On March 2, 2015, and March 4, 2015, Defendants filed Preliminary Objections to the Second Amended Complaint. An arbitration hearing was scheduled for March 26, 2015. On March 26, 2015, an entry of *non pros* was entered against Plaintiff. On May 19, 2016, Plaintiff filed a petition to open the *non pros*, which was denied on June 15, 2016.

## • Procedural History in the above-captioned matter.

The above-captioned matter, *Index Realty et. al. V. Gargano et. al*, (hereinafter the Index Matter) was filed on August 21, 2015. Wherein the Legal Malpractice Crossclaim, forming the genesis of this appeal, was filed. A few months following the entry of *Non Pros* in the Gargano

---

Pro., 2252(a)(1)-(4). In *Ross v. Tomlin*, the Superior Court clarified that while Rule 232(a) does not specifically address Rule 2252 crossclaims, it still applies to them. *Ross v. Tomlin*, 696 A.2d 230, 321-32 (Pa. Super. 1997).

[3] Mr. Gargano filed several other causes of action for Detrimental Reliance, Unjust Enrichment, Intentional Misrepresentation. Fraud and Deceit, Conversion, Trespass to Chattels, Negligent Misrepresentation, Fraud and Deceit and Negligence.

[4] The Philadelphia Court of Common Pleas docket number for the underlying action, Gargano V. Index Realty et, al is, 140603667. Mr. Gargano was represented by Defendant-Appellant in this underlying action.

2

Matter, the Defendants in the Gargano Matter filed the above captioned *Dragonetti* action against Plaintiff in the Gargano Matter, Joseph Gargano (herein Index Defendant Gargano), and his legal counsel from Gargano Matter, Joseph Q. Mirarchi (herein Index Defendant Mirarchi). On October 29, 2015, Index Defendant Gargano filed Preliminary Objections, which were denied on November 23, 2015. On December 4, 2015, a Default Judgment of $19,562.85 was entered against Index Defendant Mirarchi, for failure to answer the Complaint. The Complaint was served on him personally on October 20, 2015.

On December 15, 2015, Index Defendant Gargano, filed an Answer to the Complaint and an additional Counterclaim against Plaintiffs in the Index Matter, for the funds he originally sought from them in the underlying Gargano Matter. Index Defendant Gargano, also filed as New Matter, a Crossclaim for legal malpractice against Index Defendant, Mirarchi, for his conduct in the Gargano Matter. This is the Crossclaim forming the basis of this appeal.

On January 5, 2016, the Counterclaim Defendants, filed Preliminary Objections to Index Defendant Gargano's Counterclaim. On March 15, 2016, those Preliminary Objections were denied. On April 7, 2016, the Counterclaim Defendants filed an answer to Index Defendant Gargano's Counterclaim and New Matter.

On April 27, 2016, Index Defendant Gargano filed an answer to the April 7th New Matter filed by Index Plaintiffs. On May 19, 2016, Index Defendant Mirarchi filed an Entry of Appearance in the Index Matter and filed a response to the December 15, 2015, New Matter Crossclaim containing allegations of legal malpractice. On that same day, Index Defendant Mirarchi filed, in The Index Matter, a petition to open the aforementioned, March 26, 2015, Judgment of *Non Pros*, entered in the Gargano Matter against his former client, Index Defendant Gargano.[5] On May 20,

---

[5] The docket was corrected and this petition to open the *non pros*, incorrectly filed in the Index Matter, was transferred to the docket in the Gargano Matter.

3

2016, the parties attended a scheduled arbitration in the Index Matter. The arbitrators found in favor of the Defendants in the Index Matter. Additionally, the arbitrators found in favor of Index Defendant Gargano on the December 15th, 2015 Counterclaim and awarded him one dollar. On June 6, 2016, Plaintiffs in the Gargano Matter filed an answer to the Petition to Open the *Non Pros* from March 26, 2015, which was filed by Index Defendant Mirarchi. On June 16, 2016, Index Defendant Gargano filed an Appeal from the Arbitrator's Award on the Legal Malpractice Crossclaim. On June 23, 2016, the Petition to Open Judgment by Default filed by Index Defendant, Mirarchi, was denied.

The case then proceeded to a bench trial, on the Legal Malpractice Crossclaim, held before This Court on February 7, 2017. On March 29, 2017, both parties filed post-trial bench memos. On July 26, 2017, this Court entered a verdict in favor of Defendant in the Crossclaim, Joseph Mirarchi, which stated that "the crossclaim does not state or plead a cause of action upon which a verdict or remedy could be rendered in favor of Plaintiff in the Crossclaim Mr. Gargano." On August 2, 2017, Plaintiff in the Crossclaim filed a post-trial motion. Upon reading the post-trial motion this Court realized that it did not have the full contents of the Crossclaim when it entered the July 26, 2017, verdict in favor of Defendant in the Crossclaim. On August 4, 2017, this Court entered an Amended Order, granting Plaintiff in the Crossclaim's post-trial motion. Judgment was entered in favor of Plaintiff in the Crossclaim and against Defendant in the Crossclaim in the amount of $19,000. On August 9th, 2017 Defendant in the Crossclaim filed a motion for Reconsideration which was Denied by this Court on August 16, 2017. Defendant in the Crossclaim filed a timely notice of appeal on August 17, 2017, and a timely statement of errors in accordance with 1925(b) on August 30, 2017.

## II.    Facts.

4

**Facts forming the underlying breach of contract matter.**

Between 2006 and 2013, Joseph Gargano was the beverage manager at the now-defunct La Castagne restaurant in Philadelphia. Plaintiff's Second Amended Complaint, Case No. 140603667, filed Feb. 10, 2015, pp. 8.[6] Because La Castagne was penniless, General Manager Anthony Masapollo asked Mr. Gargano to purchase alcohol for the restaurant with a personal credit card. *Id* at 8. Mr. Gargano agreed to purchase alcohol on his personal credit card, on the condition that he be reimbursed for any money spent on behalf of La Castagne. *Id.* The Restaurant was sold in December of 2013, and Mr. Gargano was told, by Mr. Masapollo that he would be reimbursed with proceeds from the sale of La Castagne. *Id* at 10. Mr. Gargano was not paid in full and hired an attorney, Joseph Mirarchi, to file the underlying lawsuit against the owners of La Castagne and its insurer, Index Realty Inc. *Id.* at 11.

**Facts forming the legal malpractice crossclaim in the above-captioned matter.**

On February 7, 2017, a one-day bench trial proceeded before the Honorable Judge Kenneth J. Powell Jr. on the issue of the existing legal malpractice crossclaim against Defendant in the Crossclaim. (hereinafter Appellant). Appellant testified that he is an attorney licensed to practice law in Pennsylvania. N.T. February 7, 2017, pp. 10. Appellant formed an attorney-client relationship with Plaintiff in the Crossclaim (hereinafter Appellee) to represent him in the underlying breach of contract action. *Id.* An arbitration in the underlying matter was scheduled for March 26, 2015. *Id.* Appellant did not request a continuance and did not attend the arbitration. *Id.* Appellant did not inform Appellee about the date of the arbitration. *Id.* Consequently, Appellee was also absent. *Id.* Appellant alleged that he notified Appellee about the arbitration date, but he did not provide a record of the phone call. *Id.* Due to their respective absences, a judgment of *Non*

---

[6] There are no page numbers anywhere in this document. The page number corresponds to what this Court's PDF document indicated.

*Pros* was entered on March 26, 2015. On March 29, 2015, Appellant informed Appellee of the *Non Pros* and told him that he intended to file a motion to open the *Non Pros*. *Id*. Appellant filed a petition to open the *Non Pros* over one year later. N.T. February 7, 2017, pp. 11. Appellant's Petition to Open the *Non Pros* stated that Appellee "did not fail to appear through any error or disregard of his own" and that Appellee "was relying on the undersigned attorney to advise him of the arbitration date." N.T. February 7, 2017, pp. 12-13.

Appellant testified that he did not file the Petition to Open the *Non Pros* until May of 2016 because it hadn't been filed by Appellee's current legal counsel. N.T. February 7, 2017, pp. 16. He also noted that Appellee's alleged, current legal counsel never entered his appearance on the docket, so he was confused about whether his representation was officially severed. *Id*. Appellant discussed the files turned over to him by Appellee for the purpose of litigation. N.T. February 7, 2017, pp. 19, 26. Appellant did not return the file upon Appellee's request, because, according to his fee arrangement, the file was his work product until all costs are reimbursed. *Id* at 19. Appellant knew that withholding a clients' file, even over a fee dispute, was against the law if it could prejudice a client. N.T. February 7, 2017, pp. 19 & 34. Appellant believed that he did not prejudice Appellee by retaining the file because it contained information he thought was also in Appellee's possession. *Id*. Appellant recalled speaking to Appellee's current counsel on the telephone about the petition to open the *Non Pros*. N.T. February 7, 2017, pp. 31. Appellant also testified that he understood the underlying Gargano matter to be mutually resolved. N.T. February 7, 2017, pp. 26-28. Appellant believes that Appellee currently works for the Defendants in the Gargano matter. *Id*. This is not evidence of a mutual resolution, it is merely a suspicion of a relationship.

6

Appellee then testified that he retained Appellant to litigate the Gargano Matter, in which he alleged that he has not been reimbursed all of the money he loaned to his employer. N.T. February 7, 2017, pp. 36. Appellee made no repayment agreement with Defendants in the Gargano Matter. *Id.* Appellee opined that he provided Appellant with original documents showing the damages owed to him by the Defendants in the Gargano Matter. N.T. February 7, 2017, pp. 37. Appellant did not return those documents to Appellee. *Id.* Appellee did not receive correspondence from Appellant about the date of the arbitration and only received intermittent correspondence afterward. N.T. February 7, 2017, pp. 37-40. Appellee understood the amount owed to him by the Defendants in the Gargano Matter to be $19,000. N.T. February 7, 2017, pp. 41. Appellee then testified that he does not currently work for the Defendants in the Gargano Matter and that he has no current business dealings with them. N.T. February 7, 2017, pp. 43. Appellee did mention that he is currently friends with Defendants in Gargano Matter and that they agreed to a mutual discharge of the lawsuits they filed against each other, without reimbursement to Appellee. N.T. February 7, 2017, pp. 52-57.

### III. Issues

Defendant raises the following issues:

1. The Trial Court erred as a matter of fact and law by finding in favor of Mr. Gargano when it ruled on Mr. Gargano's Motion for Post-Trial Relief without allowing Mr. Mirarchi the opportunity to file a response to the motion.

2. The Trial Court erred as a matter of fact and law by finding in favor of Mr. Gargano when it issued a Decision vacating its Order of July 26th, 2017 and found in favor of Mr. Gargano and awarding damages against Mr. Mirarchi in the amount of nineteen thousand dollars ($19,000.00).

3. The Trial Court erred as a matter of fact and law by finding in favor of Mr. Gargano when it failed to consider the effect Mr. Gargano's settlement of the

7

underlying matter with the plaintiffs on the Legal Malpractice Cross-Claim filed against Defendant Mr. Mirarchi.

4. The Trial Court erred as a matter of fact and law by finding in favor of Mr. Gargano when it failed to consider and apply the fact that Mr. Gargano was not prejudiced by Mr. Mirarchi's retention of the copies of information.

5. The Trial Court erred as a matter of fact and law by finding that Mr. Gargano established a claim for Legal Malpractice.

6. The Trial Court erred as a matter of fact and law by finding that Mr. Gargano established damages in the amount of nineteen thousand dollars ($19,000.00).

7. The Trial Court erred as a matter of fact and law by finding that Mr. Gargano was entitled to damages in the amount of nineteen thousand dollars ($19,000.00).

8. The Trial Court erred as a matter of fact and law in finding that Mr. Gargano established proximate causation of damages in the matter.

9. The trial court erred as a matter of fact and law in finding that Mr. Gargano established a claim for Legal Malpractice when he failed to present an Expert Witness in the matter.

10. The trial court erred as a matter of fact and law by finding in favor of Co-Defendant, Joseph J. Gargano, hereinafter, "Mr. Gargano", when the sole issue which the court instructed the parties to brief was "whether Mr. Gargano's settlement of the underlying case with the named plaintiffs of this matter extinguishes his crossclaim for legal malpractice pending against Mr. Mirarchi because the debt is non-existent (Hearing Transcript, p. 70, 11. 11-14).

## IV. Analysis

### a. This courts disposition of the post-trial motions filed by the parties was proper.

8

Where, as here, the trial court sits as the sole finder of fact, an appellate court will not reverse on appeal unless the trial judge's findings are unsupported by competent evidence. *Doman v. Brogan*, 592 A.2d 104, 110 (Pa. Super. 1991).

Appellant's first statement of error alleges that this Court erred when it issued an amended order on August 4, 2017, finding in favor of Appellee, prior to Appellant's filing post-trial motions. It is well established in Pennsylvania that trial courts have broad discretion to grant or deny a new trial. *Flenke v. Huntington*, 111 A.3d 1197, 1199 (Pa. Super. 2015). The "disposition of post-trial motions is for the sound discretion of the trial court." *Com., Dep't of Transp. v. Consol. Rail Corp.* 519 A.2d 1058, 1059 (Pa. Cmwlth. 1986)(*Citing Abbott v. Steel City Piping Co.*. 437 Pa. 412, 263 A.2d 881 (Pa. 1970).

At the request of this Court, both parties filed post-trial bench memos on March 29, 2017. On July 26, 2017, this Court entered judgment in favor of Appellant. On August 2, 2017, Appellee filed a post-trial motion. Upon reading Appellee's post-trial motion, this Court realized that it was not in possession of Appellee's entire Crossclaim, which contained the cause of action and relief sought. Realizing that Appellee's pleadings did state a claim, this Court entered an amended order on August 4, 2017, entering a judgment of $19,000 in damages in favor of Appellee. On the same day, after this Court's entry of judgment, Appellant's Answer to Plaintiff's August 2, 2017, post-trial motion was filed.

Appellant is correct that this Court was not in possession of his post-trial motion filed on August 4, 2017, in response to Appellee's August 2, 2017, post-trial motion. However, based on the discretion *Flenke* and *Com., Dep't of Transp supra*, vest with the trial court, this court could amend its July 26, 2017, order, and triage post-trial documents

9

filed in the docket as it saw fit. Therefore, this Court did not err when it issued its amended order on August 4, 2017. This issue is meritless.

### b. This Court did not err when it determined that Plaintiff established a claim for Legal Malpractice against Defendant-appellant.

Appellant's issues 2, 4, 5, 6, 7, and 8 are all relevant within the context of whether or not Appellee's cause of action for legal malpractice is viable. Therefore, they will be addressed together. Appellant alleges that this court erred when it determined that Appellee established a viable legal malpractice cause of action.

The threshold element of any legal malpractice claim, whether brought in contract or tort, is the existence of an attorney-client relationship. *Heldring v. Lundy Beldecos & Milby, P.C.*,151 A.3d 634, 641 (Pa. Super. 2016). In order to establish a claim for legal malpractice, a plaintiff must demonstrate three elements. 1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff. *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998) (*citing Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989)).

An essential element to this cause of action is "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." *Kituskie v. Corbman*, 714 A.2d 1027, at 1030. Damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages. *Id.* In essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the

10

underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a "case within a case"). *Id.*

In this case, every element necessary to establish a legal malpractice claim in Pennsylvania is accounted for. During the bench trial held before this Court on February 7, 2017, Appellant testified unequivocally, that he established an attorney-client relationship with Appellee, satisfying the first element. N.T. February 7, 2017, pp. 10. Appellee also provided the same testimony to this Court.

Appellant's conduct also satisfies the second element. He failed to exercise the ordinary skill and knowledge of a licensed attorney when he failed to attend an arbitration, resulting in a Judgment of *Non Pros*. Furthermore, Appellant did not file a timely Petition to Open the *Non Pros*, despite telling Appellee, via text message, that he would do so. N.T. February 7, 2017, pp. 16. Eventually, over one year later, Appellant filed a Petition to Open the *Non-Pros* in the Index Matter on May 19, 2016, which was denied on June 15, 2016. Appellant disputes Appellee's assertion that he also failed to notify him about the date of the arbitration but this Court does not find any of Appellant's testimony at the February 7, 2017, hearing to be credible. *Id.* If Appellant had either, attended the arbitration, or filed a timely petition to open the *Non Pros*, so that the Gargano Matter could advance to a conclusion, Appellee could have presented evidence to support his claims. Appellant's indolence and complete disregard for his responsibilities deprived Appellee of a fair opportunity to present his case.

To add insult to injury, Appellant also refused to return Appellee's litigation file. Appellee alleged that the file contained original documents and Appellant disputes this claim. Once again, this Court does not find Appellant's testimony to be credible. Instead

11

of returning the file to Appellee, Appellant cowered behind his fee agreement, demanding to be compensated for this pathetic excuse for legal counsel, before he would return the file. This level of greed and avarice from a licensed attorney in Pennsylvania is reprehensible. Without the file that Appellant refused to return, Appellee couldn't effectively pursue the underlying claim any further. Appellant also testified that Pennsylvania Law prohibits an attorney from withholding a client file, even over a fee dispute, if it could prejudice a client. N.T. February 7, 2017, pp. 33-34. These troubling facts clearly demonstrate that Appellant failed to exercise the ordinary skill and knowledge of a licensed attorney.

Appellee has also established that Appellant's negligence was the proximate cause of his damages, satisfying the third element of a legal malpractice cause of action. Appellant's failure to attend the arbitration, followed by his failure to promptly file a petition to open the *non pros*, and refusal to return Appellee's litigation file is legal malpractice, because his underlying breach of contract claim is supported by the pleadings filed in the Gargano Matter and Appellee's trial testimony before this Court.

As was stated *supra*, Appellee alleged that he was owed money by the Defendants in the Gargano Matter and asserted a number of different causes of action in his pleadings, including breach of contract. In Pennsylvania, three elements are necessary to properly plead a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999). It is equally well established that the elements of an enforceable oral contract are "offer,

12

acceptance, a meeting of the minds, and an exchange of consideration." *Schreiber v Olan Mills*, 627 A.2d 806 (Pa. Super. 1993). Appellee has established those elements here.

Appellee's trial testimony and his Second Amended Complaint, establish the existence of an oral agreement between him and Defendants in the Gargano Matter. N.T. February 7, 2017, pp. 36. The agreement is a simple one. The trial record shows that Appellee purchased liquor on a personal credit card for his employer, pursuant to a discussion with his employer he expected to be repaid. *Id.* He testified that his damages are $19,000, which he alleges is the balance currently owed to him. N.T. February 7, 2017, pp. 41. Appellee has not been repaid in full. N.T. February 7, 2017, pp. 36, 56.

Appellee's Second Amended Complaint, filed in the Gargano Matter, also shows the existence of the oral agreement he formed with the Gargano Matter Defendants. Credit card statements were attached to the Second Amended Complaint, showing the liquor purchases that were made. Second Amended Complaint, Case Number, 140603667, filed Feb. 10, 2015, Exhibit B. The Amended Complaint also shows email correspondence and text messages from the Gargano Defendants acknowledging Appellee's debt. Defendant-Appellants' Second Amended Complaint, Case Number, 140603667, filed Feb. 10, 2015, Exhibit E, F, G. What's clear from that correspondence is that the Gargano Defendants recognize that they owed money to Appellee. However, the correspondence suggests the amount is in dispute. Even though the amount of damages is in dispute, it does not vitiate the existence of the damages and the valid oral agreement that Appellee would have been able to support, based on his pleadings and testimony before this Court. If Appellant would have competently performed his duties, Appellee certainly would have been able to realize some kind of repayment, as opposed to nothing. Therefore, because Appellee's underlying

13

claim and his testimony before this court show the existence of an oral agreement, and his damages, this Legal Malpractice claim against Appellant is valid. Statements of error 2,4,5,6, and 8 are meritless.

### c. Mr. Gargano's "agreement" does not preclude his claim for legal malpractice against Mr. Mirarchi.

Appellant's third statement of error alleges that this Court erred when it found for Appellee, even though he worked out a mutual discharge with the Index Defendants. In a legal malpractice action, the circumstances of the settlement affect whether a Plaintiff is able to proceed with a legal malpractice claim against an attorney. When a "settlement has been negotiated by an attorney and accepted by the client, absent fraud on behalf of the attorney, a client is precluded from bringing a legal malpractice action due to dissatisfaction with the settlement." *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991). However, *Muhammad* has been construed narrowly by Pennsylvania appellate courts, and, when a settlement does occur, a client may still proceed with a legal malpractice action (1) if the attorney sued did not settle the case; (2) if the malpractice plaintiff was forced to settle because of the attorney's negligence; or (3) if the malpractice plaintiff does not try to question, retrospectively, the amount of the settlement the attorney negotiated. See, e.g., *White v. Kreithen*, 644 A.2d 1262 (Pa. Super. 1994). *alloc. denied*, 539 Pa. 679, 652 A.2d 1324 (1994); *McMahon v. Shea*, 688 A.2d 1179, 1182 (Pa. 1997).

In this case, Appellee negotiated a mutual discharge with the Index Defendants. He agreed to stop pursuing the counterclaim in the Index Matter, provided that the Index Defendants drop the above-captioned *Dragonetti* claim. In these facts, the circumstances

14

leading up to Appellee's decision to file a legal malpractice claim against Appellant have absolutely nothing to do with dissatisfaction over terms of a settlement negotiated by Appellant and agreed to by Appellee. Appellee only agreed to stop pursuing his debts due to the negligence of Appellant. Therefore, these facts do not fit within the *Muhammad* universe of case law. Appellee's facts fit more appropriately fit within the *White* and *McMahon* line of cases because he had no choice but to negotiate an end to this litigation due to Appellant's malpractice. Appellee's only opportunity to obtain all or some of the money owed to him was in the Gargano Matter. That door was closed to him when the *Non Pros* was entered due to Appellant's failure to appear at the arbitration and his subsequent failure to file a timely petition to open the *non-pros*. Furthermore, Appellant refused to provide Appellee with his litigation documents, which were original copies, preventing him from pursuing any productive course of action.

Therefore, because circumstances of Appellee's mutual discharge of his claim does not fit within the *Muhammad* line of cases and Appellee's mutual discharge was directly caused by the negligence of Appellant, his claim Legal Malpractice for is not vitiated. This statement of error is meritless.

### d. Expert testimony was not necessary for Mr. Gargano to establish a claim for legal malpractice under these facts.

Appellant's 9th statement of error alleges that this Court erred when it found for Appellee even though he did not present an expert witness at trial. It is well established as a general matter that expert testimony is necessary when the subject matter of the inquiry is one involving special skills and training beyond the ken of the ordinary layman *Reardon v. Meehan*, 227 A.2d 667, 670 (Pa. 1967). Pennsylvania courts allow flexibility in legal

15

malpractice cases on the issue of whether expert testimony is necessary. *Storm v. Golden*, 538 A.2d 61, 65 (Pa. Super. 1988). Clearly, where the issues are not beyond such knowledge, the appropriate standard of care can be established without expert testimony. Where the issue is simple, and the lack of skill obvious, the ordinary experience and comprehension of laypersons can establish the standard of care. *Rizzo v. Haines*, 555 A.2d 58, 66 (Pa. 1989). Pennsylvania law does not address this issue within the context of a legal malpractice bench trial, where a learned Judge sitting as the finder of fact uses their accumulated legal knowledge and skill to determine the appropriate standard of care.

These facts present an issue so simple, that even a non-lawyer could understand it. It does not take a panel of esteemed legal minds to understand that an attorney needs to show up to work, which is exactly what Appellant didn't do when he failed to attend the arbitration. Another basic responsibility is communication with the client. Appellant failed to notify Appellee about the arbitration hearing so that he could attend. Without evidence, Appellee was unable to proceed with his case. Appellant's refusal to provide Appellee with his litigation file prevented him from using that evidence to effectively litigate his case after the Non *Pros* was entered. An attorney must also maintain deadlines with precision and diligence. Appellant failed to adhere to well-known civil litigation guidelines when he didn't file a timely petition to open the *non-pros*. Appellant filed the petition to open the non-pros over one year later, putting the final nail in the coffin of Appellee's case.

This Court, based on its decades of legal experience was fully equipped to comprehend the standard of care, within the context of how Appellant's actions directly caused Appellee's damages. Expert testimony was not required. Therefore, this statement of error is meritless.

16

**e. Defendant-appellant's tenth statement of error is vague and therefore this court is not obligated to address it.**

Appellant's tenth statement of error alleges, essentially, that this Court erred by finding in favor of Appellee. It is well established in Pennsylvania that Appellant's concise statement "must properly specify the error to be addressed on appeal." *In re A.B.*, 43, 63 A.3d 345, 350 (PA. Super. 2013). [T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." Id. "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." Id.

At the February 7, 2017, bench trial this court issued the following briefing instructions to the parties.

> "I guess the real nutshell issue is, how does the underlying case settlement affect the case here? And does it distinguish (sic) it, because that debt is nonexistent? So, we have to look at that and that's really all I want you to look at. You can write anything else you want. You can proposed (sic) findings and conclusions. N.T. 2/7/2017 pp.70.

In this case, this Court requested briefs from the parties about whether the mutual discharge extinguished Appellee's cause of action for legal malpractice. Additionally, this court also provided the following guidance to counsel:

> You can write anything else you want. You can proposed (sic) findings and conclusions. I didn't read the documents, obviously, but you see – (sic) I'm of a certain mind at this point, but I can be disabused at this point, that's why I'm going to give you a chance to write. *Id.*

This court determined that further briefing from the parties on this issue was necessary before it issued a decision on this legal malpractice crossclaim. Once the briefs were submitted by the parties, the only logical outcome was for this court to find in favor

of either the Plaintiff or Defendant in this <u>Crossclaim</u>. It is the opinion of this court this statement of error is not specific enough to conform with the requirements of Rule 1925(b). Thus, this issue is meritless.

## f. **Conclusion**

For the foregoing reasons, the Court's verdict should be affirmed.

BY THE COURT,

_____

KENNETH J. POWELL, JR., J.

18



KENNETH J. POWELL, JR.
JUDGE

544 CITY HALL
PHILADELPHIA, PA 19107
(215) 686-7510
FAX: (215) 686-7375
E-MAIL: kenneth.powell@courts.phila.gov

## IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CIVIL TRIAL DIVISION

INDEX REALTY, INC., *et al*

Plaintiffs,

v.

JOSEPH J. GARGANO., *et al*

Defendants

: August Term 2015
: No. 02844
: 2688 EDA 2017
:
:
:
:
:
:
:
:

In response to Crossclaim Defendant Joseph Mirarchi Esq's timely statement of errors in accordance with Rule 1925(b) please file the attached trial court opinion.

BY THE COURT:

Kenneth J. Powell, Jr. J