644 A.2d 1262

**J.M. WHITE, Appellant,**

v.

**Martin KREITHEN, Esquire, Bruce Baron, Esquire, Peter M. Villari, Esquire, and Richard M. Golomb, Esquire, Individually and t/a Kreithen, Baron, Villari & Golomb, P.C., Appellees.**

Superior Court of Pennsylvania.

Argued April 27, 1994.

Filed July 25, 1994.

Petition for Allowance of Appeal Denied Nov. 28, 1994.

116

Martin Heller, Philadelphia, for appellant.

James Prahler, Philadelphia, for appellees.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

McEWEN, Judge.

This appeal has been taken from the order, entered December 1, 1993, which dismissed, with prejudice, the amended complaint filed by appellant seeking damages incurred as a result of the alleged legal malpractice committed by appellees during their representation of appellant. The trial court, believing the case to be controlled by *Muhammad v. Strassburger*, 526 Pa. 541, 587 A.2d 1346 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991), granted the preliminary objections in the nature of a demurrer filed by appellees and dismissed the malpractice complaint. Since we find *Muhammad* inapplicable to the facts of the instant case, we vacate and remand for further proceedings.

Appellant, in the amended *pro se* complaint she filed against appellees, her former counsel, alleged, in pertinent part:

7. Pursuant to the aforesaid [contingency fee] agreement, defendants herein filed a lawsuit in December, 1987, in the Court of Common Pleas of Philadelphia County, against a number of health care providers involved in plaintiff's medical treatment.

8. On April 17, 1992, plaintiff discharged defendants as her attorneys, because of their negligence in handling of the case and, further, because they were not ready for trial, the case having been scheduled to be added to the Major Jury List on August 25, 1992. Defendants' specific acts of negligence are enumerated in paragraph 17 hereof.

9. Plaintiff entered her appearance *pro se* in the medical malpractice case on July 9, 1992.

10. Defendants were permitted by the court to withdraw their appearance on July 28, 1992.

11. Because the case was to be tried in the fall of 1992, plaintiff promptly, after discharging defendants, diligently sought to retain other counsel to represent her, but was unable to secure counsel because of defendants' refusal to transfer the file to plaintiff and because of unreasonable demands made by defendants for "referral fees" from proposed new counsel.

12. When the case was placed on the trial list on August 25, 1992, no new attorney had entered an appearance on plaintiff's behalf.

13. At a conference before the Calendar Judge, in October, 1992, which was not attended by any of the within defendants, the Calendar Judge recommended a settlement in the amount of $150,000.00. He stipulated that plaintiff would be forced to immediate trial, if she did not accept his recommendation and that plaintiff would be granted a continuance, if defendants, in the medical malpractice case, did not agree to pay that sum. Plaintiff's medical expenses alone exceeded $150,000.00 at that time.

14. Defendants in the medical malpractice case agreed to pay the figure recommended by the Calendar Judge. Plaintiff had no choice but to accept the figure, because of the negligence of defendants herein in not having the case ready for trial, as set forth more specifically in paragraph 17 hereof, and because plaintiff would have been unable to try the case herself.

15. On June 5, 1992, before the defendants withdrew their appearance, they filed of record in the underlying medical malpractice case a document placing a value on plaintiff's case of between $250,000.00 and $500,000.00.

16. Had the case been properly investigated and prepared for trial by defendants, the case would have had a settlement or verdict value of at least $500,000.00, because of the seriousness of plaintiff's illness and the amount of her past and future medical expenses.

17. Defendants, acting as aforesaid, were careless and negligent in:

(a) failing to properly, adequately and timely investigate plaintiff's claim;

(b) failing to properly, adequately and timely conduct pre-trial discovery;

(c) failing to properly, adequately and timely prepare plaintiff's case for trial;

(d) failing to properly, adequately and timely secure the medical records, medical bills and other expenses necessary to prepare the case for trial;

(e) failing to properly, adequately and timely respond to defendants' discovery requests in the medical malpractice action;

(f) failing and/or refusing to consult with plaintiff and keep her fully informed of developments in the case resulting in plaintiff's inability to discover defendants' negligence in the medical malpractice action until approximately August, 1992;

(g) obstructing plaintiff's efforts to promptly secure new counsel after defendants were discharged, resulting in

plaintiff being compelled to accept $150,000.00 or be forced to immediate trial;

(h) failing to properly, adequately and timely secure the necessary medical experts and all other necessary experts herein;

(i) failing to deliver the file to plaintiff until three days before the case was added to the trial pool preventing proper assessment and preparation by plaintiff and/or anyone on her behalf;

(j) holding themselves out to be competent to handle plaintiff's claim, when, in fact, they were not.

18. Due solely to the carelessness and negligence of the defendants herein, acting as aforesaid, plaintiff was compelled to accept a settlement offer, which was at least $350,000.00 lower than the true value of the case, as placed thereon by defendants themselves and the value of the case as warranted by the facts and the law.

Appellees filed preliminary objections in the nature of a demurrer to the amended complaint, alleging that appellant had failed to state a cause of action for malpractice since she had admittedly settled the underlying action. Appellees relied upon the decision of the Supreme Court in *Muhammad v. Strassburger, supra,* for their argument in support of a demurrer. The learned trial court judge agreed with appellees, concluding that the settlement of the underlying action precluded any claim for legal malpractice against appellees. We have studied the decision of the Supreme Court in *Muhammad v. Strassburger, supra,* and find ourselves unable to agree that, under the facts as set forth in the amended complaint, all causes of action against appellees are barred as a result of the settlement of the medical malpractice action.

We note that our scope of review is limited where there is a challenge to the sustaining of a preliminary objection in the nature of a demurrer. *Mahoney v. Furches,* 503 Pa. 60, 468 A.2d 458 (1983). Our inquiry goes only to determining the legal sufficiency of appellant's complaint and we may only decide whether sufficient facts have been pleaded which

would permit recovery if ultimately proven. *Gordon v. Lancaster Osteopathic Hospital Association*, 340 Pa.Super. 253, 489 A.2d 1364 (1985). We must also be able to state with certainty that "upon the facts averred, the law will not permit recovery by the plaintiff." *Berger v. Ackerman*, 293 Pa.Super. 457, 459, 439 A.2d 200, 201 (1981).

*VanMastrigt v. Delta Tau Delta*, 393 Pa.Super. 142, 147–48, 573 A.2d 1128, 1130 (1990). *Accord: Collas v. Garnick*, 425 Pa.Super. 8, 10–11, 624 A.2d 117, 119 (1993), *allo. denied*, 535 Pa. 672, 636 A.2d 631 (1993). Since a demurrer may only be sustained where the complaint is clearly insufficient to establish the plaintiff's right to relief, all well-pleaded, material facts must be taken as true in ruling upon the motion. Conclusions or averments of law are, of course, not admitted for purposes of ruling on the demurrer. *See: County of Allegheny v. Commonwealth of Pennsylvania*, 507 Pa. 360, 371, 490 A.2d 402, 408 (1985).

There are three essential elements which must be established in order to bring an action for legal malpractice: 1) the employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff. *Trice v. Mozenter*, 356 Pa.Super. 510, 515 A.2d 10 (1986), *allo. granted*, 514 Pa. 643, 523 A.2d 1132 (1987); *ei bon ee baya ghananee v. Black*, 350 Pa.Super. 134, 504 A.2d 281 (1986); *Schenkel v. Monheit*, 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979) (establishing the elements in Pennsylvania).

*Storm v. Golden*, 371 Pa.Super. 368, 374–75, 538 A.2d 61, 64 (1988), *allo. denied*, 524 Pa. 630, 574 A.2d 71 (1989). *Accord: Collas v. Garnick, supra* at 12, 624 A.2d at 120. The averments of appellant's complaint, accepted as true only for purposes of our review, establish each of the required elements of legal malpractice. Nonetheless, appellees understandably argue the trial court properly sustained their demurrer to the complaint of appellant because our Supreme Court, in *Muhammad v. Strassburger, supra*, barred *all* actions for legal malpractice where the plaintiff voluntarily and

knowingly concluded the underlying action by entering into a settlement agreement.

It is necessary, however, to scrutinize the entire *Muhammad* opinion of our Supreme Court since focus only upon the ruling is to see the tree but not the forest. Our distinguished colleague, the eminent Judge James R. Cavanaugh, reflected quite an insightful view of *Muhammad* when, in *Miller v. Berschler*, 423 Pa.Super. 405, 621 A.2d 595 (1993), he opined:

The court gave the following rationales for this rule: the court declared that the essence of settlement is contractual in nature, and similar to a contract, the time for questioning whether a settlement agreement is advantageous is before settlement, *[Muhammad v. Strassburger, supra]* 526 Pa. at 547–548, 587 A.2d at 1349; the contract principle of *caveat emptor* applies similarly to settlements, so that a person entering into a settlement agreement is locked into whatever compromise he agreed to once the settlement becomes effective, *id.* at 548, 587 A.2d at 1349; the court found that overriding principles of public policy supported its result, as lawyers might be reluctant to settle a case if they feared a client might later find a way to sue them for something that " 'could have been done, but was not,' " *id.* at 548, 587 A.2d at 1349; the court was concerned with the lack of finality and delay in already overcrowded courts and believed "we [the court] should view 'litigation concerning litigation' cases with a jaundiced eye," *id.* at 549–550, 587 A.2d at 1350; litigation over settlements is of particular concern, because settlement is an essential part of the efficient operation of our judicial system, *id.* at 550, 587 A.2d at 1349; and finally, there are distinct societal advantages to a judicial system which is not adversarial in nature but attempts to resolve disputes by compromise or concession, *id.* at 551–552, 587 A.2d at 1351.

It appears that, given the broad policy rationales employed by the Supreme Court and the unqualified articulation of its "simply stated" holding, *Muhammad* proclaims a clear, bright line rule which, absent fraud, shields attorneys from legal malpractice claims sounding in negligence or contract

where they involve cases concluded by completed settlement. Post-*Muhammad*, a party dissatisfied with the settlement agreement provided by their attorney can only seek redress if it can establish it was fraudulently induced into agreeing to settle, and it is incumbent on the client to plead with specificity fraud in the inducement. *Id.* at 552–53, 587 A.2d at 1351.

*Miller v. Berschler, supra* at 409–10, 621 A.2d at 597–598. *See also: Spirer v. Freeland and Kronz,* 434 Pa.Super. 341, 643 A.2d 673 (1994).

It is thus apparent that *Muhammad* does not control the present case since the settlement in the underlying action was not a settlement negotiated by counsel for appellant. Rather, after appellant discharged appellees, allegedly for failure to properly investigate and prepare her case for trial, appellant was forced, due to her inability to retain counsel, to accept the settlement figure proposed by the judge. Moreover and quite importantly, none of the motivating reasons for the Supreme Court decision in *Muhammad, supra,* would be achieved by finding the instant malpractice action barred, since appellees did not participate in the settlement, and appellant was prevented—allegedly as a result of appellees' conduct—from questioning "before settlement" whether the terms of the settlement were advantageous. Rather, the instant action more closely resembles *Collas v. Garnick, supra,* where this Court held that the mere fact that the allegedly negligent act—resulting in harm to the plaintiff—occurred as part of the settlement of another claim, does not require that *Muhammad* be found applicable so as to bar all causes of action for malpractice. Thus, we conclude that, because the complaint alleges that appellant was *subsequently* forced to settle her claim *as a result* of appellees' negligence, the rule pronounced in *Muhammad* may not be invoked to preclude her claim for such negligence. We, therefore, vacate the order entered on December 1, 1993, and remand for proceedings consistent with this Opinion.

Order reversed. Case remanded. Jurisdiction relinquished.