### BUILDERS SQUARE, INC.

v.

### Joseph J. SARACO.

### Civ. A. No. 94–4116.

United States District Court,
E.D. Pennsylvania.

Nov. 28, 1994.

William R. Herman, Eric H. Siegel, Philadelphia, PA, for plaintiff.

Samuel J. Pace, Jr., Joseph J. Saraco, Philadelphia, PA, for defendant.

#### MEMORANDUM

WALDMAN, District Judge.

Plaintiff alleges that it sustained damages as a result of defendant's legal malpractice and breach of fiduciary duties. Presently before the court is defendant's Motion to Dismiss the complaint in this diversity case for failure to state a claim on which relief may be granted.

In deciding a Rule 12(b)(6) motion, the court accepts as true all of plaintiff's allegations and inferences reasonably drawn

therefrom, and views them in a light most favorable to the nonmoving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). Dismissal is not appropriate unless it clearly appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Plaintiff was a defendant in a products liability suit filed in the Bucks County Common Pleas Court on February 25, 1992. Plaintiff was the retailer of the allegedly defective product. Also named as a defendant was Randi Enterprise Company ("Randi"), the distributor of the product. Randi had $1 million of liability coverage under a policy issued by National Union Fire Insurance Company of Pittsburgh ("National Union"). Pursuant to agreements of Randi and National Union to defend and indemnify Builders Square, defendant Saraco entered an appearance on behalf of plaintiff on August 3, 1992. Defendant was paid by National Union.

On January 27, 1993 and on May 4, 1993, the plaintiffs in the Bucks County action formally offered to settle their claims for $1 million, the limit of the National Union policy. Defendant Saraco rejected the offers without consulting plaintiff and first informed plaintiff of the settlement offers just prior to the commencement of trial in May 1994. Defendant also failed to apprise plaintiff of a conflict of interest once it appeared that National Union could not settle for less than its maximum exposure and thus risked little in proceeding to trial. Plaintiff alleges that defendant failed to exercise independent professional judgment but deferred to National Union in the conduct of the products liability case in lieu of his allegiance to plaintiff.

Plaintiffs in the Bucks County action re-filed their case in the Eastern District of Pennsylvania on July 28, 1993. They subsequently increased their settlement demand to $7 million after obtaining a medical evaluation indicating that the plaintiff wife's condition was more serious than they had originally thought.

On May 13, 1994, after learning of the earlier settlement offers, plaintiff demanded that National Union immediately retain independent counsel to represent Builders Square, and protested the manner in which the underlying litigation and settlement discussions had been conducted. Trial was scheduled to commence on May 16, 1994.

Defendant Saraco withdrew his representation and Robert St. Leger Goggin entered an appearance for Builders Square just prior to trial. On May 19, 1994, after three days of trial, the parties agreed to a $4.25 million settlement, a figure recommended by the trial judge. Of that amount, Builders Square contributed $3.25 million, $2 million in cash and $1.25 million from its excess insurance which represented the limit of that coverage.

Plaintiff alleges that defendant's failure to pursue the earlier settlement opportunities, his failure adequately to prepare the case for trial and his failure to apprise plaintiff of a conflict in time to allow new counsel adequately to prepare for trial placed plaintiff in a much weaker position to defend or settle the case. In the settlement agreement and general release, plaintiff explicitly reserved all claims against defendant Saraco.

■ An attorney has a duty to explore and timely communicate to his client settlement offers, as well as other information important to the objectives of the representation. *See Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58, 65–66 (1989); Pa.Rule of Prof.Conduct 1.4 and cmt. Defendant does not appear to dispute this but contends that plaintiff's claims are barred by the rule announced in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 587 A.2d 1346, *cert. denied*, —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). The Court in that case held that in the absence of fraud, a client may not sue his attorney for malpractice in the negotiation of a settlement agreement to which the client assented but with which he became dissatisfied. 587 A.2d at 1351.

Plaintiffs in *Muhammad* had agreed to settle a medical malpractice case for an amount offered by the defendants and communicated to plaintiffs by their attorney. They subsequently advised their attorney that they were dissatisfied with the amount

of the settlement. After the trial court enforced the settlement agreement, plaintiffs asserted negligence, contract, breach of fiduciary duty and other claims against their attorney related to his alleged malpractice in failing to secure a more lucrative settlement. In support of its holding, the Court in *Muhammad* relied heavily on the "strong and historical public policy of encouraging settlements" of lawsuits and noted that lawyers would be afraid to settle cases if they were subject to suit by a client who later became disgruntled. 587 A.2d at 1349.

■ It does not clearly appear from plaintiff's allegations that its claims are barred by *Muhammad.*

This is not an action by a client who later became dissatisfied with a settlement agreement consummated by his attorney with the client's assent. It is an action by a client dissatisfied with his attorney for allegedly failing to communicate settlement offers and depriving his client of an opportunity to settle a case on terms far more favorable than those later available in the circumstances in which the client was placed because of the attorney's conduct.

Defendant argues that because plaintiff agreed to settle the underlying suit for an amount it has acknowledged to be "reasonable," this case falls within the ambit of *Muhammad.* What plaintiff has alleged is that the ultimate settlement "was reasonable under the circumstances." As alleged by plaintiff, these circumstances include a failure to pursue a more favorable settlement opportunity before the damage claim was bolstered, a failure adequately to prepare a defense and a failure timely to alert plaintiff of the need to secure new counsel which placed plaintiff in a much weaker position by the time of trial.

Unlike plaintiffs in *Muhammad* and its progeny, plaintiff in this case did not agree to the acts of which it now complains. Plaintiff has not become dissatisfied with the consequences of "his" decision to settle. *Martos v. Concilio,* 427 Pa.Super. 612, 629 A.2d 1037, 1039 (1993). Plaintiff is not expressing "retrospective unhappiness" with a settlement agreement. *Spirer v. Freeland & Kronz,* 434 Pa.Super. 341, 643 A.2d 673, 675 (1994).

Plaintiff is unhappy at having to settle a case on far less advantageous terms than it allegedly could have if defendant had timely communicated and pursued prior settlement opportunities, or prepared plaintiff's case more competently or apprised plaintiff of a conflict in time for new counsel adequately to prepare its case.

Indeed, at the time of settlement, plaintiff expressly reserved its claims against defendant. Such a reservation of rights does not itself create rights. It does underscore, however, that plaintiff has not had a change of heart about the action of an attorney to which it had assented.

This case more closely resembles *White v. Kreithen,* 435 Pa.Super. 115, 644 A.2d 1262 (1994) than *Muhammad.* The Court in *White* held that a claim that plaintiff was forced to settle a case on terms less advantageous than she could have because of her discharged attorney's negligent preparation and representation was not barred by *Muhammad.* 644 A.2d at 1265. The Court in *White* noted that on its face *Muhammad* did not apply as the attorney charged with malpractice had not consummated the settlement agreement. Similarly, defendant in this case did not represent plaintiff at trial or when it agreed to the mid-trial settlement.

To allow plaintiff's claim would not undermine the policy of encouraging settlement of legal disputes. To the contrary, it would further that policy by providing an additional incentive for lawyers faithfully to communicate all settlement offers to their clients. On the facts alleged by plaintiff, defendant's failure to do so in this case resulted in a consumption of additional court time and resources, the avoidance of which is a paramount consideration behind the policy of encouraging settlements. *Muhammad,* 587 A.2d at 1350.

To allow plaintiff's claim would not make lawyers more fearful of settling cases. It might make them more reluctant not to communicate settlement offers timely to their clients or generally to keep them apprised of all matters pertinent to the representation.

The court concludes that *Muhammad* does not preclude relief on the type of allegations set forth by plaintiff in its complaint. Defendant's motion will be denied.