J-A07041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA FLANAGAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN HAND, ESQUIRE  F/D/B/A | : | No. 1010 EDA 2018 |
| WILLIAMS AND HAND, P.C. | : | |

Appeal from the Order March 1, 2018
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2015-08413

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED APRIL 08, 2019**

Appellant Patricia Flanagan appeals from the Order entered on March 1,

2018, in the Court of Common Pleas of Bucks County Civil Division granting

the motion for summary judgment of Appellees Kevin Hand, Esquire F/D/B/A

Williams and Hand, P.C. and dismissing Appellant's Fourth Amended

Complaint with prejudice.  Upon our review, we affirm.

The trial court set forth the relevant facts and procedural history herein

as follows:

> Appellant initiated the instant matter by filing a Praecipe for
> Writ of Summons on March 16, 2015 in the Court of Common
> Pleas of Philadelphia County against Defendants Kevin Hand,
> Esquire; Lynelle Gleason, Esquire; Kardos, Rickles and
> Bidlingmeier, P.C.; Williams and Hand, P.C.; Williams Family Law,
> P.C.; and Jeff Williams, Esquire, as a result of her dissatisfaction
> with representation she received[] in support proceedings related
> to her divorce action. Appellant filed her subsequent Complaint for
> professional liability against Defendants on June 25, 2015. The

_____

\*   Former Justice specially assigned to the Superior Court.

Complaint asserted counts of Fraud, Professional Negligence/Malpractice, Breach of Contract/Covenant of Good Faith and Fair Dealing, and Breach of Fiduciary Duty.

[Appellees] filed Preliminary Objections to Appellant's Complaint on October 5, 2015, and Appellant filed her First Amended Complaint on October 26, 2015. Pursuant to a Stipulation filed on October 27, 2015, this matter was transferred to the Court of Common Pleas of Bucks County by court order on November 6, 2015.

Appellant filed her Second Amended Complaint on January 11, 2016, which deleted Kardos, Rickles and Bidlingmeier, P.C. as a defendant. After [Appellees] filed Preliminary Objections to Appellant's Second Amended Complaint on February 1, 2016, Appellant filed her Third Amended Complaint on February 22, 2016.

[Appellees] filed Preliminary Objections to the Third Amended Complaint on March 11, 2016. Appellant filed a response in opposition to the Preliminary Objections on May 2, 2016. After the parties filed a flurry of motions related to discovery, oral argument was eventually held on December 13, 2016, after which this [c]ourt entered an Order on January 25, 2017, sustaining the objections to Count I (a demurrer to the claim for Professional Negligence/Malpractice), [Appellant's] improper verification, and [Appellant's] requests for "other and further relief" and attorneys' fees in the Complaint's "wherefore" clauses. The Order overruled [Appellees'] objection to Count II (Breach of Contract) and denied [Appellees'] motion for sanctions, but granted [Appellant] leave to file an amended complaint within twenty days of the date of the Order.

On February 13, 2017, Appellant filed her Fourth Amended Civil Action Complaint alleging claims of Professional Negligence/Malpractice (Count I) and Breach of Contract (Count II) against remaining [Appellees] Kevin Hand, Lynelle Gleason and Williams and Hand, P.C. In her Complaint, Appellant alleged that in January, 2012, she had retained Williams and Hand, P.C. to represent her in "family law matters stemming from a divorce action" under Bucks County Docket No. 2009-61819, and that the firm's principal, Jeff Williams, had advised her that Hand would be representing her because Williams' ex-wife represented Appellant's ex-husband in the underlying divorce action. Appellant further alleged that she had not been provided with a written fee agreement or an explanation of how much her legal fees would likely be.

Appellant claimed that after [Appellees] had provided her with her ex-husband's financial information, she contested the amounts reported by him for his annual income and his business valuation. She thereafter attended a Master's Hearing on March 8, 2013, with [Appellees] at which [Appellees] allegedly failed to challenge her ex-husband's financial information. Appellant claimed that her ex-husband's annual income was "fraudulently low," his business valuation was "several million dollars less than [Appellant's] business valuation," and that she had been assigned responsibility for a line of credit against which Husband had drawn checks for $188,000 for business purposes and which he was using to pay his divorce attorney. When Appellant asked [Appellees] to act to either stop her ex-husband from paying his divorce attorney with the business funds or allow her to pay her attorneys' fees with the same account, [Appellees] allegedly advised her that there was nothing they could do. [Appellees] also allegedly failed to act on her request to have her ex-husband pay her legal bills.

Appellant claimed that she had paid [Appellees] approximately $200,000 over a fourteen month period leading up to the Master's Hearing. She alleged that when she attempted to object to her husband's financial information at the Master's Hearing, she was told by Hand to keep quiet. When she complained to [Appellees] about their representation of her interests at the Master's Hearing and their failure to challenge her ex-husband's financial data, she was allegedly told that her concerns were being "saved" and would be raised at a hearing *de novo*. She claimed that she was advised by [Appellees], however, that this would require an additional fee of $150,000. Appellant asserted that at that point she "finally understood that [Appellees] were not loyally representing her" and she terminated their representation.

Appellant claimed that she was "on the verge of bankruptcy," but obtained new counsel with whom she attended a hearing *de novo* on July 9, 2013. The matter did not conclude on that day and was continued for a second day on September 18, 2013. Appellant claimed, however, that on September 18, 2013, her ex-husband offered her a settlement, "knowing that [she] was financially unstable and could not afford to pursue litigation." She claimed she did not want to accept the offer but was advised by her new counsel that "she would need approximately $80,000 more to litigate the matter if [she] did not settle the matter that day." Appellant therefore asserted in her Complaint that "because of [Appellees'] intentional scheme to prolong representation, by

- 3 -

failing to raise the aforementioned issues at the Master's Hearing, and [Appellees'] failure to obtain payment for her attorney fees, [Appellant] was caused to accept a diminished settlement to her severe financial detriment."

[Appellees] filed an Answer and New Matter to [Appellant's] Fourth Amended Complaint on March 16, 2017, in which they specifically denied not providing [Appellant] with a written fee agreement or an explanation of how much her fees would likely cost. They further specifically denied ever telling [Appellant] that they were "saving any issues to be addressed at a later proceeding," or that [Appellant] asked if they could stop her ex-husband from using "business funds" to pay his attorney, or that she asked if she could use the "business funds" to pay her attorneys. They also denied that [Appellant] had asked them why they had not raised the contested financial issues at the Master's Hearing. They asserted that they did raise those issues at the hearing, and denied telling her to keep quiet at that hearing. Furthermore, [Appellees] denied [Appellant's] allegation that she had terminated them, and asserted to the contrary that they had in fact terminated their representation of her.

On October 2, 2017, [Appellees] filed a Motion for Summary Judgment in which they argued that, as a result of the gist of the action doctrine, [Appellant's] claim was based not upon a breach of contract but upon negligence, and was therefore barred by the two-year Statute of Limitations. [Appellees] further argued that [Appellant] could not prove their liability for her damages because their representation of [Appellant] was limited to the non-binding Master's Hearing, which was subject to a subsequent *de novo* review. Finally, [Appellees] argued that [Appellant's] legal malpractice claim was barred by the doctrine announced in Muhammad v. Strassburger, McKenna, Messer. Shilobod and Gutnick, 587 A.2d 1346 (Pa. 1991), [*rehearing denied*, 528 Pa. 345, 598 A.2d 27 (1991), *cert. denied*, 502 U.S. 867 (1991)] which prohibits a legal malpractice claim against attorneys after a plaintiff has agreed to a settlement in the underlying case.

Appellant filed a response in opposition to [Appellees'] Motion for Summary Judgment on November 1, 2017. She contended *inter alia* that summary judgment was premature because discovery was not yet complete, the claim was filed within two years of the discovery of when the malpractice occurred, and [Appellees'] "fraudulent inducement also tolls the statute of limitations." Appellant further argued that Muhammad is not applicable, and that another case, White v. Kreithen, 644 A.2d 1262 (Pa.Super. 1994)[, *appeal denied*, 652 A.2d 1324

- 4 -

(Pa.1994)] was controlling in this matter. (*See* Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, 11/1/17.)

On March 1, 2018, after careful consideration of the issues this [c]ourt entered an Order granting [Appellees'] Motion for Summary Judgment and dismissing Plaintiff's Fourth Amended Complaint with prejudice.

On April 2, 2018, Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania from our Order of March 1, 2018. Pursuant to our Order of March 27, 2018, directing [Appellant] to file a concise statement of the errors complained of on appeal within twenty-one days of the date of the order, Appellant filed her Concise Statement on April 23, 2018.

Trial Court Opinion, filed 7/12/18, at 1-6.

Although she raised nine (9) allegations of trial court error in her Concise Statement of Matters Complained of on Appeal filed on April 23, 2018, in her appellate brief Appellant presents only the following issue for our review:

Did the Court of Common Pleas err when it held <u>Muhammad</u>, *infra*., required below Defendants' Motion for Summary Judgment be granted secondary to below Plaintiff's underlying action's settlement through successor counsel?

Brief for Appellant at 10.[1]   It is well-settled that:

[o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and

---

[1] While Appellant did not raise this specific issue directly in her Concise Statement of Matters Complained of on Appeal, we will not find it to be waived as it was fairly suggested in Paragraph 6 thereof which reads:  "Whether this Honorable Court erred by holding [Appellant's] legal malpractice claims are barred because [Appellant] agreed to settle the underlying action."  ***See*** Pa.R.A.P. 1925(b)(4)(vii).

that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

***Ludwig v. McDonald***, 2019 WL 759973 at *5 (Pa.Super. filed Feb. 21, 2019) (citations omitted).

Appellant asserts ***Muhammed***, ***supra***, is inapplicable to her instant legal malpractice claim against Appellees due to the fact that Appellees' underlying legal errors caused Appellant to accept a "diminished settlement" by successor counsel. Brief for Appellant at 15. Appellant reasons that unlike the ***Muhammed*** plaintiffs, she is "not questioning the initial counsel's settlement valuation. [She] is asserting that she settled only because her funds were totally drained as a result of [Appellees'] failures- she could no longer afford to proceed." ***Id***. at 16. Relying upon ***White***, ***supra***, Appellant contends that where, as herein, a plaintiff is not attempting to second guess a settlement valuation, but rather, avers negligence precipitated that settlement by successor counsel, prior counsel's negligence "precludes that settlement from barring a subsequent legal malpractice action." ***Id***. at 18. In the alternative, Appellant concludes that:

> If this Honorable Court disagrees that there exists a negligence exception to Muhammad (i.e. not mere negligent settlement evaluation but rather negligent settlement causation), Muhammad does not even apply instantly. That is, the settlement at issue regarded the *de novo* litigation (through successor

counsel)-two distinct proceedings- necessarily distinguishing Muhammad's rationale.

*Id*. Following our review, we disagree.

***Muhammad*** is a seminal case wherein the plaintiffs brought a medical malpractice claim following the tragic death of their infant son during a surgical procedure. ***Muhammad***, 587 A.2d at 1347. The case settled for $26,500, and the Muhammads later informed counsel of their dissatisfaction with that amount. The Muhammads obtained new counsel and filed a legal malpractice action against their previous counsel in the underlying medical malpractice case. *Id.* at 1347–1348. The Pennsylvania Supreme Court ultimately held that absent specific allegations of fraud, a client who agrees to settle a case cannot subsequently bring a legal malpractice action against his or her attorney based upon retrospective unhappiness with the terms of that settlement to which he or she agreed. The Court announced:

> Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

*Id.* at 1348. The Supreme Court explained its decision was based on the strong and historical public policy of encouraging settlements:

> The primary reason we decide today to disallow negligence or breach of contract suits against lawyers after a settlement has been negotiated by the attorneys and accepted by the clients is that to allow them will create chaos in our civil litigation system. Lawyers would be reluctant to settle a case for fear some

- 7 -

enterprising attorney representing a disgruntled client will find a way to sue them for something that "could have been done, but was not." We refuse to endorse a rule that will discourage settlements and increase substantially the number of legal malpractice cases. A long-standing principle of our courts has been to encourage settlements; we will not now act so as to discourage them.

*Id.* at 1349.

The Court further declared that, "henceforth we should view 'litigation concerning litigation' cases with a jaundiced eye" and clarified that absent a specific allegation of fraud, a settlement agreement forecloses a dissatisfied litigant's ability to file suit against his or her attorney:

We do believe, however, there must be redress for the plaintiff who has been *fraudulently induced* into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement. One may not induce another to contract by fraudulent misrepresentations.

*Id.* at 1351 (emphasis in original) (citation, ellipsis, and quotation marks omitted). The **Muhammad** Court declared that "[i]n the event a litigant believes he has been fraudulently induced into settling, he has the right to file a suit, **alleging with specificity** the acts that he claims are fraudulent." **Id**. at 1352 (emphasis in original).

In **White**, the plaintiff fired the lawyers who had been representing her in a medical malpractice action against a number of health care providers involved in her medical treatment because she felt they had not been preparing for trial adequately. White alleged in her ensuing legal malpractice

- 8 -

complaint that her former counsel subsequently had interfered with her ability to secure new counsel by refusing to transfer her file and by demanding unreasonable referral fees from proposed new counsel. **White**, 644 A.2d at 1263. Consequently, White entered her appearance *pro se* in the medical malpractice case, and following a pretrial conference she was forced to accept an unfavorable settlement recommended by the Calendar Judge rather than immediately proceed to trial without counsel. **Id**.

The **White** Court found **Muhammad** did not preclude the subsequent legal malpractice action against White's prior counsel under the facts set forth in White's amended complaint because counsel did not negotiate the settlement of the medical malpractice action. The Court further found that White did not knowingly and voluntarily conclude the underlying action by entering into the settlement agreement, but rather, was forced to settle her claim as a result of the appellees' alleged failure to investigate and prepare her case for trial. **Id**. at 1265. The Court stressed that the spirit of the rule pronounced in **Muhammed** would not be achieved in finding White's malpractice action to be barred, since "appellees did not participate in the settlement, and appellant was prevented- allegedly as a result of appellees' conduct- from questioning 'before settlement' whether the terms of the settlement were advantageous." **Id**. The Court concluded that "because the complaint alleges that appellant was subsequently forced to settle her claim

as a result of appellees' negligence, the rule pronounced in **Muhammad** may not be invoked to preclude her claim for such negligence." **Id**.

To the extent Appellant argues that **White** suggests a legal malpractice action may be maintained even where one has fired his or her attorney and the client subsequently accepts an unfavorable settlement because she could not afford to proceed further, **see** Appellant's Brief at 16-17, we note a critical difference between that case and the instant situation. Herein, as we shall discuss in more detail *infra*, Appellant does not allege that Appellees interfered in any way with her ability to secure new counsel, and, in fact, she was able to do so for her appeal *de novo*. In this regard, we are guided by this Court's decision in **Spirer v. Freeland & Krontz**, 643 A.2d 673 (Pa.Super. 1994), *appeal denied*, 543 Pa. 730, 673 A.2d 336 (1996) which was handed down a few months prior to **White**, although Appellant fails to acknowledge this decision in her appellate brief.

In **Spirer**, the plaintiff alleged in her complaint that she had entered into an oral contract with the defendant attorneys wherein they agreed to represent her in a divorce action instituted by her former husband. The complaint asserted that the defendants had breached their duty of good faith and fair dealing in their performance of the contractual agreement and that their failure to perform their contractual obligations, and specifically obtain accurate financial information concerning her husband's assets, caused her to receive a deficient distribution of marital property, alimony, and other

available relief. *Id*. at 675. She testified regarding those claims at her deposition and argued counsel's discovery efforts should have uncovered significantly more assets belonging to her former husband which could have been claimed as joint marital property. *Id*. at 675-76. Notwithstanding her representations, the plaintiff ultimately executed settlement documents in connection with her divorce action wherein she stated she fully understood and accepted the settlement terms as fair and equitable and that she had entered into the settlement freely and voluntarily. *Id*. at 676.

Examining the record in light of the clear holding in **Muhammad**, this Court reversed the trial court's denial of the defendant's motion for summary judgment and in doing so stated:

> It is evident that the plaintiff's complaint failed to allege with specificity any fraudulent acts on the part of the defendants. Moreover, neither the testimony of the plaintiff in deposition, nor any other matter in the record, provides any additional evidence to support an inference that the plaintiff has established a cause of action in fraud against her former attorneys. The complete absence of allegations or other inferences of fraud compels us to conclude that the trial court committed an error of law in failing to grant summary judgment to the defendants, based upon the directly applicable rule enunciated by the Supreme Court in **Muhammad**.

*Id*.

Also instructive is our more recent holding in **Silvagni v. Shorr**, 113 A.3d 810, 813 (Pa.Super. 2015), *reargument denied*, May 27, 2015, *appeal denied*, ___ Pa. _____, 128 A.3d 1207 (2015), wherein the plaintiff brought a legal malpractice action against his former attorney and firm for allegedly

offering flawed advice that induced him into settling his worker's compensation claim. The plaintiff claimed that but for the incorrect legal advice he had received, he would not have agreed to the terms of the settlement. The trial court granted summary judgment in favor of the defendants, and, on appeal, this Court affirmed on the basis of **Muhammad**. In doing so, we reasoned as follows:

> During the colloquy, [] Silvagni acknowledged, under oath, that he understood that in return for the settlement he would no longer receive medical benefits or any other benefits under the Workers' Compensation Act. N.T. Compromise and Release Hearing, *supra* at 6–7. Counsel engaged Silvagni in a thorough colloquy, advising him of the consequences of the settlement. The colloquy included questions from opposing counsel as well as Judge Baldys. There is no indication that Silvagni's assent to the Compromise and Release Agreement was involuntary. Silvagni is thus barred from filing an action in negligence against Defendants. **See Muhammad, supra** (when client has signed off on final settlement agreement, absent fraud, client may not later sue his attorney because he is dissatisfied with settlement amount). **See also Banks v. Jerome Taylor & Assoc.**, 700 A.2d 1329, 1332 (Pa.Super.1997) (where dissatisfied litigant merely wishes to second guess decision to settle due to speculation he may have been able to "get a better deal," **Muhammad** rule applies to bar litigant from suing counsel for negligence). *Compare* **Martos v. Concilio**, 427 Pa.Super. 612, 629 A.2d 1037 (1993) (client displeased with results of settlement agreement could not sue attorney for malpractice absent allegations of fraudulent inducement) *with* **McMahon v. Shea**, 547 Pa. 124, 688 A.2d 1179 (1997) (holding **Muhammad** rule did not apply to divorce settlement where counsel allegedly failed to advise client of legal ramification of settlement) and **Collas v. Garnick**, 425 Pa.Super. 8, 624 A.2d 117 (1993) (counsel who negligently advised personal injury clients that signing general release did not bar future lawsuits against other possible tortfeasors could be liable in negligence).
>
> Unless Silvagni had specifically pled, and could prove, Defendants fraudulently induced him into signing the Compromise and Release Agreement, or he could prove that Defendants failed

> to explain the effect of that settlement, or that the settlement was somehow legally deficient, Silvagni is barred from maintaining an action in negligence against Defendants. Viewing the record in the light most favorable to Silvagni, and resolving all doubts as to whether there exists a genuine issue of material fact against Defendants as the moving party, we conclude that it is clear that Defendants are entitled to judgment as a matter of law. We find no abuse of discretion or error of law. *Sokolsky, supra.*

***Silvagni***, 113 A.3d at, 815–16 (2015) (footnote omitted).

This Court later referenced ***Silvagni***'s application of the ***Muhammad*** rationale when deciding ***Kilmer v. Sposito***, 146 A.3d 1275 (Pa.Super. 2016) at which time we distinguished an attorney's professional judgment in negotiating a settlement from the attorney's failure to advise a client correctly on the law pertaining to the client's interests. In ***Kilmer***, the plaintiff/wife, following her attorney's advice, elected to take against her late husband's will, which gave her 1/3 of his estate. *Id*. at 1276. The wife subsequently learned that by operation of law she would have been entitled to one-half of the estate as a surviving spouse who had married the testator after he made his will. She retained new counsel and eventually settled with the estate, agreeing to take a 41.5% share. *Id.* at 277. Thereafter, the wife sued her former attorney, alleging professional negligence and breach of contract for failing to advise her correctly on the law. *Id.* at 1277, 1279. The trial court sustained the defendant/attorney's preliminary objections, finding that the claims were barred by ***Muhammad***. *Id.* at 1278.

On appeal, this Court indicated it was constrained to reverse the trial court's Order and in doing so reasoned as follows:

- 13 -

> ***Muhammad*** [ ] stands for the proposition that dissatisfied plaintiffs may not later challenge an attorney's professional judgment with respect to an amount of money to be accepted in a settlement, unless plaintiffs plead and can prove they were fraudulently induced to settle. As such, the ***Muhammad*** decision is inapposite to the present action, which focuses not on [the attorney's] professional judgment in negotiating a settlement—indeed, he was no longer [the wife's] attorney when [the wife] ultimately settled—but on his failure to advise her correctly on the law pertaining to her interest in her late husband's estate. The facts of the case *sub judice*, therefore, take it outside the scope of the ***Muhammad*** prohibition against second-guessing an attorney's judgment as to settlement amounts.

***Id.*** at 1279-80. We concluded that "barring Appellant from seeking to hold Appellee accountable for allegedly flawed legal advice on an underlying matter essential to her inheritance as a surviving spouse would not advance the interests of finality in settlements." ***Id***. at 1280.

In her Fourth Amended Complaint, Appellant herein did not allege that any fraudulent conduct on the part of Appellees induced her to enter into the Property Settlement Agreement on December 18, 2014. Rather, Appellant asserted claims sounding only in negligence and breach of contract. Moreover, this case does not present a situation wherein Appellant relied upon the incorrect advice of Appellees in entering the Property Settlement Agreement as was the case in ***Kilmer***, nor was she deprived of the opportunity to retain new counsel like the plaintiff in ***White***. To the contrary, regardless of Appellees' alleged negligent acts or omissions at the non-binding 2013 Master's Hearing, Appellant was represented by new counsel at the trial *de*

*novo* which presented a fresh opportunity for Appellant to pursue the issues she faulted Appellees for failing to advance.

In fact, Appellant indicated that she was assisted in the negotiation and preparation of the Property Settlement Agreement which settled the underlying divorce action by Susan Levy Eisenberg, Esquire, that she fully understood the terms, conditions, and provisions thereof, and that she believed those terms to be "fair, just, adequate, a[n]d reasonable." **See** Property Settlement Agreement, 12/18/14, at 4, Section VI. Unlike the plaintiff in **White** who was left with no choice but to settle her medical malpractice action or proceed to trial *pro se*, Appellant's decision to enter the Property Settlement Agreement with the assistance of new counsel was purely of her own volition and cannot be attributed to any fraudulent interference by Appellees. As the trial court reasoned:

> Appellant was obviously unhappy with the amount of support she was awarded after the Master's Hearing on March 8, 2013, and therefore proceeded to a hearing *de novo* in an attempt to obtain a greater financial award. On the scheduled second day of the hearing *de novo*, Appellant claimed that when she was informed by her new counsel that if she did not accept her ex-husband's settlement offer it would cost her approximately $80,000 more to continue to litigate the matter, she reluctantly accepted the offer. Presumably, when the hearing *de novo* did not conclude in her favor after the first day but was continued, and she was faced with the prospect of mounting litigation costs that might not result in a guaranteed favorable outcome, Appellant apparently accepted that settlement offer.
> Appellant obviously believes that she was not awarded a sufficient amount of support, and is attempting to attribute that to the alleged failure of [Appellees] to challenge the financial information provided by her ex-husband at the non-binding Master's hearing. Appellant suggests she was "shortchanged" in

the amount of support she received between the time of the Master's conference and the hearing *de novo*, and her legal malpractice claim is therefore based upon mere speculation that had her ex-husband's financial information been challenged, she would have received a greater award of support. She fails to acknowledge, however, that she nevertheless settled for a lesser amount of support than she expected, but which was presumably based upon the same information presented at the Master's conference.

Appellant is now clearly attempting to obtain a "second bite of the apple" through this legal malpractice action against her original attorneys. What is clear from the record, however, is that there is no evidence to suggest that Appellant was fraudulently induced into accepting the settlement by [Appellees], and significantly, [Appellees] were in fact no longer representing Appellant in the subject proceedings when she agreed to accept her ex-husband's settlement offer. Therefore, while it was difficult to discern a legal malpractice action against [Appellees] in this matter based upon breach of contract in that Appellant failed to identify with any specificity particular contract clauses that were breached, and Appellant's claims against [Appellees] sounded primarily in negligence, our decision was based upon, and we were consequently constrained to grant summary judgment in accordance with, the principles announced by the Supreme Court of Pennsylvania in Muhammad, *supra*.

Trial Court Opinion, filed 7/12/18, at 8-9.

Accordingly, we affirm the trial court's Order entering summary judgment against Appellees and dismissing Appellant's Fourth Amended Complaint with prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/19